RICHARD R. SUTHERLAND, Appellant, *v.* EARL L. GROSS, and EARL L. GROSS, TRUSTEE OF LAS VEGAS 70, LTD., EXCHANGE TRUST, JACK M. and PENNY COPELAND, PHILIP D. GRAY, and PHILIP D. GRAY REALTY, INC., DENNIS D. BROWN, WESTERN REALTY VENTURES, INC., Respondents.

No. 19070

April 25, 1989 772 P.2d 1287

*Marquis, Haney & Aurbach,* and *William T. Martin,* Las Vegas, for Appellant.

*Deaner, Deaner & Scann,* Las Vegas, for Respondents Gross and Las Vegas 70.

*William L. McGimsey,* Las Vegas, for Respondents Copelands, Gray, Gray Realty, and Western Realty Ventures.

*Dennis D. Brown,* Newark, CA, In Proper Person.

# OPINION

*Per Curiam:*

## FACTS

All parties in this case at one time had a property interest in the Desert Pines Apartments, also known as the Fremont Arms Apartments (Apartments). Respondent Earl Gross, as trustee for Las Vegas 70, Ltd., Exchange Trust, entered into a contract to sell the Apartments to respondents Jack and Penny Copeland. Because the sale involved a real estate installment contract, Las Vegas 70 retained legal title to the Apartments.

On November 13, 1984, the Copelands conveyed the Apartments to appellant Richard Sutherland by way of a subcontract of sale. On that same date, the Copelands assigned a 10.2 percent interest in the Sutherland subcontract to their realtor, respondent Philip D. Gray Realty, Inc., in satisfaction of the real estate commission.

On September 1, 1985, Sutherland assigned his interest in the Apartments to respondent Dennis Brown. Brown assumed the first mortgage to Las Vegas 70, assumed the obligations to the Copelands, and agreed to pay Sutherland $600,000 on or before September 1, 1990.

Finally, on December 13, 1985, Brown transferred his interest in the Apartments to respondent Western Realty Ventures, Inc. for $30,000. Gray Realty owned all of Western's stock, and respondent Philip Gray and his wife were the sole officers and directors of Western.

In all of the conveyances previously described, each contract contained a waiver of personal liability. The provision stated that the vendee would assume no personal liability as a result of a breach of the agreement. Instead, the seller would look only to the real property for its security and payments.

While Sutherland possessed the property, a dispute arose between himself and the Copelands. Consequently, they executed a release and settlement agreement which provided for a monthly rental subsidy of $215 for every vacant unit in excess of six. The Copelands agreed to reimburse Sutherland for a total of 300 vacant units in exchange for Sutherland using his best efforts to rent the Apartments.

Once Sutherland transferred the property to Brown, all payments to Las Vegas 70 and the Copelands ceased. The Copelands' legal counsel and Las Vegas 70 notified Sutherland and Brown that they were in default on their contracts.

After several months of negotiations among the parties, respondents had a meeting on December 13, 1985. At that meeting, respondents entered into numerous transactions, including Brown's conveyance of the Apartments to Western.

Once Western obtained its interest in the Apartments, Gross, as trustee for Las Vegas 70, instituted this quiet title action. Sutherland filed a counterclaim and a cross-claim, including the following allegations: that respondents intentionally conspired to interfere with his contractual relations with Brown; that Gross, the Copelands and Gray conspired to cause Brown to breach a power of attorney which Brown accepted from Sutherland; and that Sutherland loaned $25,000 to Brown which Brown agreed to repay on demand. The Copelands filed a cross-claim against Sutherland alleging that he breached the release and settlement agreement.

The district court quieted title in Las Vegas 70 as against the defendants, denied all the relief sought by Sutherland, and awarded the Copelands $15,480 for vacancy allowances paid for a time when Sutherland failed to use his best efforts to rent the Apartments.

## RELEASE AND SETTLEMENT AGREEMENT

The district court found that in July 1985, Sutherland began to change the Apartments from monthly rental units to an overnight lodging facility for tour groups. Consequently, Sutherland breached the release and settlement agreement when he did not use his best efforts to rent the Apartments. Therefore, the district court concluded that Sutherland was unjustly enriched by the sum of $15,480, the amount of rental subsidy which the Copelands paid to Sutherland for the vacancies during July and August 1985.

On appeal, Sutherland contends that no evidence sustains the district court's finding that he did not use his best efforts to rent the Apartments during July and August 1985. He maintains that the only people with personal knowledge of the rentals were himself and Jack Griffin, the Apartments' manager. Griffin testified that Sutherland did not talk to him about evicting tenants until August 1985. Sutherland also testified that the conversion did not begin until September 1985.

However, Brown testified that when he and Sutherland visited the property in mid-September 1985, it was nearly vacant. Brown further stated that Sutherland told him that the Apartments were

vacated 60 to 90 days prior to their visit to facilitate the conversion to a motel operation. Moreover, a summary of an October 1985 conversation between the Copelands and the Griffins, introduced into evidence at trial, contradicted Jack Griffin's trial testimony. The summary indicated that Sutherland ordered the Apartments emptied and no new rents taken after July 1, 1985.

This court will not set aside findings of fact unless clearly erroneous. NRCP 52(a). Moreover, when the evidence conflicts, we will not disturb the factual findings of the trial court. Sherman Gardens Co. v. Longley, 87 Nev. 558, 562, 491 P.2d 48, 51 (1971). Although the evidence conflicts on this issue, the record supports the district court's ruling that in July 1985, Sutherland breached the release and settlement agreement. Accordingly, the trial court correctly entered judgment in favor of the Copelands for $15,480.

### CONSPIRACY TO INTENTIONALLY INTERFERE WITH CONTRACTUAL RELATIONS

On appeal, Sutherland contends that Gross, the Copelands, Gray and Western conspired to interfere with Sutherland's installment contract with Brown. He argues that we should set aside the district court's finding to the contrary as clearly erroneous. We disagree.

An actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts. Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 303, 662 P.2d 610, 622 (1983).

To establish intentional interference with contractual relations, the plaintiff must show: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. Ramona Manor Convalescent Hosp. v. Care Ent., 225 Cal.Rptr. 120, 124 (Ct.App. 1986).

Sutherland asserts that when Brown acquired the Apartments, Brown intended to pay Sutherland $600,000 in accordance with his contractual obligations. But, after the December 13, 1985 meeting, Brown no longer intended to pay that $600,000 since he assigned his rights and obligations under the contract to Western. Additionally, Sutherland argues that Western had no intention to pay any portion of the $600,000 due him. Thus, Sutherland contends that the effect of respondents' conspiracy, with Western

acquiring the property, and Brown, the Copelands and Gray agreeing not to interfere with Gross' quiet title action, was to eliminate Sutherland's interest in the Apartments.

In its findings of fact, the district court noted that the Apartments' rental records during the ten month period in which Sutherland owned the property disclosed that the business operated at a loss. Moreover, the records showed that Sutherland made a substantial infusion of capital into the property during this time.

Notwithstanding the Apartments' financial condition, the subcontract of sale between Sutherland and Brown required Brown to pay $600,000 to Sutherland in addition to assuming the obligations to Las Vegas 70 and the Copelands. Consequently, the trial court found that this subcontract "incorporates values that are non-existent and obligations that were never intended to be honored or paid." Therefore, the court concluded that Sutherland's only rights were those he received from the Copelands by way of this contract.

The district court observed that Sutherland's rights in the Apartments did not change with the December 13 meeting. Both before and after the meeting, Sutherland's only remedy in case of default was to take possession of the property and to look to the property for any and all liability. Consequently, Sutherland failed to show that he suffered any actual harm as required in order to prove a conspiracy to intentionally interfere with contractual relations.

Findings of fact are reversible only if clearly erroneous. NRCP 52(a). As well, substantial evidence to support the district court's determinations, and thus, the constraints of the appellate process preclude us from disturbing the court's conclusion that respondents did not conspire to intentionally interfere with contractual relations. Leavitt v. Leisure Sports, Inc., 103 Nev. 81, 89, 734 P.2d 1221, 1226 (1987).

### SUTHERLAND'S FIFTH CLAIM FOR RELIEF AGAINST BROWN

The district court's judgment provided that Sutherland's counterclaims against Gross and his cross-claims against the other defendants were dismissed with prejudice. But, Brown failed to respond to Sutherland's cross-claims. Consequently, the clerk filed an entry of judgment against Brown.

On appeal, Sutherland argues that Brown's failure to answer constituted an admission of the complaint. Based on those allegations, Sutherland contends that he is entitled to a judgment against Brown for conspiring with Gross, Gray and the Copelands to deprive Sutherland of his interest in the Apartments. Moreover, Sutherland maintains that during November 1985,

Brown accepted a power of attorney from Sutherland to consummate a sale of Sutherland's interest in the property. Instead, Brown negotiated a deal which resulted in the sale of Brown's interest for $30,000 cash, without any payment to Sutherland. Thus, Sutherland argues that the conspiracy caused Brown to breach his fiduciary duty to Sutherland. Finally, Sutherland claims that Brown failed to repay Sutherland $25,000 which he advanced for expenses in renovating the property during the time when Brown owned the Apartments.

However, the answer of a co-defendant inures to the benefit of a defaulting defendant when there exists a common defense as to both of them. Paul v. Pool, 96 Nev. 130, 132, 605 P.2d 635, 636 (1980). Likewise, when the defenses interposed by the answering co-defendant call into question the validity of plaintiff's entire cause of action and when such defenses prove successful, the defenses inure to the benefit of the defaulting co-defendant. Kooper v. King, 15 Cal.Rptr. 848, 852 (Ct.App. 1961) (citations omitted). Consequently, the plaintiff cannot take judgment against the defendant in default. *Id.*

In the instant case, the respondents, other than Brown, answered Sutherland's counterclaims and cross-claims, and they successfully defended the allegations against them. The district court concluded that no conspiracy existed among Gross, the Copelands, Gray and Western to interfere with the contractual relationship between Sutherland and Brown. As well, the court concluded that Sutherland failed to meet his burden of proving his claims for quiet title and conspiracy to breach a fiduciary duty. Therefore, the district court properly dismissed these claims against Brown as well as the other respondents.

However, Sutherland's fifth claim for relief demanded from Brown $25,000 advanced to him. Since no common defense existed between Brown and the other respondents as to this claim, Brown could not benefit from their successful defense. Accordingly, we reverse the district court's dismissal with prejudice of Sutherland's fifth claim for relief against Brown, and we remand this claim for proceedings consistent with our opinion. We affirm the district court's judgment in all other respects.