87 F.3d 298
 96 Cal. Daily Op. Serv. 4324, 96 Daily Journal
D.A.R. 7041
Donald C. ERICKSON, Plaintiff-Appellant,
v.
NEWMAR CORPORATION, Does I through X and Doe Corporations I
through X, inclusive, Defendants-Appellees.
 No. 94-15726.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 20, 1995.
Decided June 18, 1996.
 
 Donald C. Erickson, Moapa, Nevada, in pro. per., for plaintiff-appellant.
 E. Leslie Combs, Jr., Combs & England, Las Vegas, Nevada, for defendant-appellee.
 Appeal from the United States District Court for the District of Nevada, Lloyd D. George, District Judge, Presiding. D.C. No. CV-91-00968.
 Before: FERGUSON and HAWKINS, Circuit Judges, and NIELSEN, District Judge.*
 FERGUSON, Circuit Judge:
 
 
 1
 Pro se plaintiff, Donald Erickson, brought suit against Newmar Corporation, claiming that his motor home, which was manufactured by the defendant, was defective. Erickson alleged violations of the Consumer Product Warranty Act[1] and supplemental state law claims including breach of the implied warranty of merchantability, fraud, negligence, and breach of the implied covenant of good faith and fair dealing. After a bench trial, the district court ruled in favor of Newmar on all claims. Erickson appeals pro se and raises numerous issues, including an allegation that defense counsel tampered with his expert witness.
 
 
 2
 We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse on the grounds of witness tampering.
 
 BACKGROUND
 
 3
 On June 22, 1990, Donald Erickson, a retiree, purchased a 1989 London Aire motor home from R.V.'s Unlimited, Inc. in Las Vegas, Nevada. Erickson paid $75,000 for the motor home, which was manufactured by the defendant, Newmar Corporation. Shortly thereafter, Erickson noticed cracks and bubbles in the fiberglass sidewalls, ill-fitting doors, and bowing and sagging of the motor home's frame.
 
 
 4
 Repairs were attempted on the motor home on nine occasions, beginning with the first repair in July of 1990. Four of those repair attempts were approved by Newmar and covered under the warranty. In the other cases, Newmar determined that the flaws Erickson complained of were not defects which required repair under the warranty. Erickson was dissatisfied with the attempted repairs and came to believe that the motor home was a lemon. Therefore, Erickson demanded that Newmar take back the motor home and refund the purchase price. Newmar refused, and Erickson filed his action against Newmar and R.V.'s Unlimited.[2]
 
 
 5
 Plaintiff's claim of witness tampering arose at the defendant's depositions of Erickson's metal expert, Dr. Steven Grimm, and his chassis expert, Gary Bennett. On the morning of September 2, 1993, Erickson and Dr. Grimm went to the office of defense counsel, Leslie Combs. Before the deposition had begun, Combs asked Dr. Grimm if he would evaluate a lock which was an important piece of evidence in an unrelated case that Combs was handling.[3] Combs offered to compensate Dr. Grimm at the rate of $100.00 per hour. Erickson was present during this conversation between Combs and Dr. Grimm. When Combs asked Erickson if there was a problem with the arrangement, Erickson said that it was not up to him to decide.
 
 
 6
 After Combs deposed Dr. Grimm, Combs escorted Dr. Grimm to another room in the office suite to view a videotape and photographs of the lock. Later that afternoon, Erickson confronted Combs regarding his offer of employment to Dr. Grimm. Erickson informed Combs that during the lunch break he researched whether Combs' offer was proper and discovered that Combs had violated the law in making an offer to Dr. Grimm. Combs and Erickson had a heated argument. Erickson asked Combs to stipulate that he would not tamper with his next expert witness, Gary Bennett. When Combs refused to agree to such a promise, Erickson canceled the afternoon deposition of Bennett.
 
 
 7
 The next day, Erickson filed a "Motion for Judgment Against Newmar for Tampering with a Material Witness." On that same day, Dr. Grimm resigned from his job with Combs. Even though Dr. Grimm was no longer working as an expert for Combs, Erickson fired Dr. Grimm because Erickson did not know if he could trust him. In addition, Erickson's chassis expert, Bennett, refused to be an expert for Erickson because he did not want to be involved in a case where "the attorneys [were] bothering the witnesses."
 
 
 8
 On October 27, 1993, the district court denied Erickson's motion for judgment against Newmar. Five days later, Erickson went to trial without his expert witnesses. The district court conducted a bench trial and thereafter entered judgment in favor of Newmar.
 
 DISCUSSION
 I. Standard of Review
 
 9
 The district court has the duty and responsibility of supervising the conduct of attorneys who appear before it. Trust Corp. v. Piper Aircraft Corp., 701 F.2d 85, 87 (9th Cir.1983). Since the district court is vested with the power and responsibility of supervising the professional conduct of attorneys before it, the appropriate standard of review is "abuse of discretion." Id.
 
 II. Witness Tampering
 
 10
 In determining plaintiff's "Motion for Judgment against Newmar for Tampering with a Material Witness," the district court interpreted the motion as an attempt by Erickson "to disqualify his own expert witness so that an adverse judgment [could] be imposed on defendant as a sanction for causing the loss of the expert." In denying Erickson's motion, the court relied solely upon cases which involve disqualification of a "switching sides" expert--an expert who is initially retained by one party, dismissed, and employed by the opposing party in the same or related litigation. In "switching sides" cases, courts may grant the original hiring party's motion to disqualify the expert when it is determined that the expert is in possession of confidential information received from the first client. See, e.g., Paul v. Rawlings Sporting Goods Co., 123 F.R.D. 271, 278 (S.D.Ohio 1988) (holding plaintiff's expert witness was not disqualified even though he had previously worked for the defense on a related matter); English Feedlot, Inc. v. Norden Laboratories, Inc., 833 F.Supp. 1498, 1505 (D.Colo.1993) (holding expert witness was not disqualified from working for adverse party because he did not receive any confidences from original hiring party); Conforti & Eisele, Inc. v. Division of Bldg. & Constr., 170 N.J.Super. 64, 405 A.2d 487, 492 (Law Div.1979) (holding expert witness was disqualified from working for adverse party because he had received privileged information from original hiring party).
 
 
 11
 The present case, however, does not involve an expert who changed sides and used confidential information. Rather, Dr. Grimm was still retained by Erickson at the time Combs made him an offer of employment. Therefore, the district court erred in its analysis.
 
 
 12
 The present case is about an attorney who offered a monetary inducement to an expert witness prior to the expert giving his testimony. Thus, plaintiff's claim of unethical conduct by defense counsel requires us to decide: 1) whether attorney Combs' offer of employment and subsequent ex parte communication with Dr. Grimm was unethical; and 2) if so, what sanction is appropriate?
 
 A. Unethical Conduct
 
 13
 District courts have clear statutory authority to promulgate rules governing the admission and conduct of attorneys who appear before them. Frazier v. Heebe, 482 U.S. 641, 645, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 557 (1987). In the District of Nevada, where this case arose, attorneys must abide by the Model Rules of Professional Conduct as adopted by the Supreme Court of Nevada. Dist.Nev.Local Rule IA 10-7 (1995). Attorney Combs' offer of employment to Dr. Grimm violates two of these rules of professional conduct: 1) the duty to obey obligations of the tribunal, Rule 173(3); and 2) the prohibition against conduct which is prejudicial to the administration of justice, Rule 203(4). Nev.Sup.Ct.R.Prof.Conduct 173(3), 203(4) (1986).
 
 
 14
 It is unethical conduct for an attorney to disobey an obligation of the court. Nev.Sup.Ct.R.Prof.Conduct 173(3).[4] In federal court, the discovery rules impose obligations on attorneys during the course of litigation. At the time of the present litigation, Federal Rule of Civil Procedure 26(b)(4) provided that a lawyer's permissible contact with an opposing party's expert was limited to interrogatories and, upon leave of the court, depositions. Fed.R.Civ.P. 26(b)(4).[5]
 
 
 15
 A leading legal ethics treatise discusses the ethical implications of communications with an adversary's expert witness. 2 Geoffrey C. Hazard & W. William Hodes, The Law of Lawyering § 3.4:402 (2d ed. Supp.1994). The treatise advises that: "Since existing rules of civil procedure carefully provide for limited and controlled discovery of an opposing party's expert witnesses, all other forms of contact are impliedly prohibited." Id. Therefore, an attorney who engages in prohibited communications violates the attorney's ethical duty to obey the obligations of the tribunal. Id.; see Nev.Sup.Ct.R.Prof.Conduct 173(3) (1986). Moreover, since the procedure for the discovery of experts is well established, an attorney may also be in violation of the rule prohibiting conduct prejudicial to the administration of justice. Id.; see Nev.Sup.Ct.R.Prof.Conduct 203(4) (1986).[6]
 
 
 16
 There is a scarcity of case law on the issue of ex parte contact with expert witnesses, possibly because the violation seldom happens. Campbell Indus. v. M/V Gemini, 619 F.2d 24 (9th Cir.1980), discusses the issue in the context of a "switching-sides" expert. In Campbell, the defense attorney engaged in ex parte contacts with plaintiff's expert while the expert was still retained by the plaintiff. Id. at 27. This court admonished the attorney for violating Fed.R.Civ.P. 26(b)(4) and upheld the district court's disqualification of the expert. Id.
 
 
 17
 Notwithstanding the lack of case law, two ethics opinions have concluded that an attorney violates an ethical duty when the attorney has ex parte contact with the opposing party's expert witness. The American Bar Association Formal Ethics Opinion 93-378 explained that although the ABA Model Rules do not explicitly prohibit ex parte contacts with an opposing party's expert witness, an attorney who engages in such contacts may violate the duty to obey the obligations of the tribunal. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 93-378 (1993); see Model Rules of Professional Conduct Rule 3.4(c) (1983); Nev.Sup.Ct.R.Prof.Conduct 173(3) (1986). The opinion reasoned that Fed.R.Civ.P. 26(b)(4)(A) sets forth a defined procedure for an attorney to conduct discovery with respect to an opposing party's expert. Ex parte communications circumvent the discovery rules and thus violate an attorney's duty to obey the obligations of the tribunal. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 93-378 (1993).
 
 
 18
 The Oregon Bar Association also issued an opinion in which it concluded that an attorney is ethically prohibited from initiating ex parte contact with an expert witness retained by opposing counsel. Or.St.Bar Ass'n, Formal Op. 1992-132 (1992). The Oregon opinion reasoned that Fed.R.Civ.P. 26(b)(4) provides that the facts known and opinions held by experts may be obtained only as provided by the Federal Rules of Civil Procedure. The opinion further stated: "It would be more accurate to say that the federal rules expressly forbid discovery of the facts and opinions of experts except through written interrogatories, or otherwise by court order or agreement of the parties." Id. The opinion concludes that an attorney who initiates ex parte communications with an adversary's expert disobeys the rule of professional responsibility which prohibits intentional violations of an established rule of procedure. Id.; see Model Code of Professional Responsibility DR 7-106(C)(7) (1981).
 
 
 19
 In the present case, Combs hired plaintiff's expert, Dr. Grimm, to examine a lock for another case. The consultation between Combs and Dr. Grimm took place out of the presence of Erickson. By his employment of Dr. Grimm, Combs entirely circumvented the discovery rules because Combs achieved unsupervised access to plaintiff's expert. Thus, applying the reasoning in the ABA Formal Opinion 93-378, Combs violated Nevada Rule 173(3) by disobeying the discovery obligations of the court.
 
 
 20
 More importantly, attorney Combs' actions had a prejudicial effect on Erickson's ability to present his case. Erickson believed he could no longer use Dr. Grimm because Erickson did not know what had transpired during the meeting between Combs and Dr. Grimm. Erickson had planned to use Dr. Grimm at trial to testify to the alleged defects in the fiberglass walls of his motor home. It had taken Erickson more than three months to locate Dr. Grimm and there were no other metal experts proficient in fiberglass in Nevada. Additionally, Bennett, the other expert who was present during the argument between Combs and Erickson, refused to testify because the "attorneys [were] bothering the witnesses." Bennett, a chassis conversion manufacturer, would have testified at trial about the motor home's chassis. Thus, two months before trial, Erickson lost two experts who were critical to his lawsuit. At trial, Erickson had neither a metals expert nor a chassis expert because he was unable to replace Dr. Grimm and Bennett. Therefore, Combs' misconduct was prejudicial to the administration of justice because it severely impeded Erickson's ability to present his case to the court. See Nev.Sup.Ct.R.Prof.Conduct 203(4) (1986).
 
 
 21
 Attorney Combs' behavior is particularly disturbing because Combs took advantage of the fact that Erickson was acting pro se. In layman's terms, Erickson labeled the employment offer to Dr. Grimm as a bribe. This may not be a fair characterization. However, attorneys must use their common sense to avoid conduct which could appear to be an improper attempt to influence a witness who is about to testify. We will never know Combs' actual motivation in making an offer of employment to Dr. Grimm. Regardless of Combs' motive, at a minimum, the offer of employment put Dr. Grimm in the position of having divided loyalties. Quite simply, this court chooses to abide by the ageless wisdom that a person cannot serve two masters.
 
 
 22
 In sum, the district court abused its discretion by failing to address Erickson's claim of unethical conduct in the form of witness tampering. The district court erred by incorrectly analyzing the issue as a case of a "switching sides" expert. We must now consider the appropriate sanction for this ethical violation.
 
 B. Appropriate Sanction
 
 23
 Federal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them. Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). By invoking the inherent power to punish bad faith conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction. Id. at 44-45, 111 S.Ct. at 2132-33.
 
 
 24
 District judges have an arsenal of sanctions they can impose for unethical behavior. These sanctions include monetary sanctions, contempt, and the disqualification of counsel. In Gas-A-Tron of Ariz. v. Union Oil Co., 534 F.2d 1322 (9th Cir.), cert. denied sub nom. Shell Oil Co. v. Gas-A-Tron of Ariz., 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976), this court recognized that a district court has the primary responsibility for controlling the conduct of the attorneys who practice before it. Id. at 1325; Trone v. Smith, 621 F.2d 994, 999 (9th Cir.1980). In Gas-A-Tron, we stated:
 
 
 25
 Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety.
 
 
 26
 Gas-A-Tron, 534 F.2d at 1324-25 (quoting Richardson v. Hamilton Int'l Corp., 469 F.2d 1382, 1385-86 (3d Cir.1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973)).
 
 
 27
 In the case at bar, Erickson raised his claim of unethical conduct. The district court abdicated its duty to examine the charge of unethical behavior and impose the necessary sanctions. See Gas-A-Tron, 534 F.2d at 1324-25. If the district judge had addressed the ethical issues implicated by Combs' behavior prior to trial, the judge could have fashioned an appropriate sanction for the violation and remedied the problem prior to trial. However, the trial court failed to sanction the unethical conduct and it must now be addressed after both sides have expended the resources to go to trial.
 
 
 28
 Defense counsel's witness tampering deprived Erickson of two essential expert witnesses in a complex products liability case, thereby preventing Erickson from receiving a fair trial. Thus, Erickson is entitled, at a minimum, to a new trial. See Burke v. Vose, 847 F.Supp. 256, 263 n. 33 (D.R.I.1993). ("Witness tampering like perjured testimony tends to subvert the entire judicial process and its principle function of ascertainment of the truth."). Finally, counsel Combs attempted to actively mislead the district court by stating (falsely, as he now candidly admits) that he solicited Dr. Grimm only after his deposition.
 
 CONCLUSION
 
 29
 The judgment of the district court is reversed and the case is remanded for a new trial. The district court is instructed to impose appropriate sanctions and disciplinary action upon defense counsel.
 
 
 
 *
 Honorable Wm. Fremming Nielsen, United States District Judge, for the Eastern District of Washington, sitting by designation
 
 
 [1]
 15 U.S.C. § 2301 et seq
 
 
 [2]
 Prior to trial, defendant R.V.'s Unlimited was dismissed with prejudice from the action pursuant to a stipulation and is not a party to this appeal
 
 
 [3]
 In Combs' affidavit opposing Erickson's "Motion for Judgment Against Newmar for Tampering with a Material Witness," Combs stated that his offer of employment to Dr. Grimm was after he had deposed Dr. Grimm. However, at oral argument Combs directly contradicted his sworn statement and admitted that he made the offer to Dr. Grimm before the deposition
 
 
 [4]
 ABA Model Rules of Professional Conduct Rule 3.4(c) (1983) was adopted in Nevada as Nev.Sup.Ct.R.Prof.Conduct 173(3) (1986). Rule 173(3) states: "A lawyer shall not [k]nowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]"
 
 
 [5]
 In 1993, at the time of this litigation, Rule 26(b)(4) of the Federal Rules of Civil Procedure provided in pertinent part:
 (4) Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
 (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.
 (B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.
 
 
 [6]
 ABA Model Rules of Professional Conduct Rule 8.4(d) (1983) was adopted in Nevada as Nev.Sup.Ct.R.Prof. Conduct 203(4) (1986)