130 Nev., Advance Opinion 54

# IN THE SUPREME COURT OF THE STATE OF NEVADA

KAMI LEAVITT,
Appellant,
vs.
JON L. SIEMS, M.D.; AND SIEMS
ADVANCED LASIK AND REFRACTIVE
SURGERY CENTER,
Respondents.

No. 59369

**FILED**

JUL 10 2014


TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court judgment on a jury verdict and post-judgment orders in a medical malpractice action. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge.

*Affirmed.*

Christensen Law Offices, LLC, and Thomas F. Christensen, Las Vegas, for Appellant.

Alverson, Taylor, Mortensen & Sanders and Chelsea R. Hueth and David J. Mortensen, Las Vegas, for Respondents.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, CHERRY, J.:

This appeal principally challenges the defendant's use of expert testimony from the plaintiff's treating physician to explain a possible alternate cause of the plaintiff's medical condition. The district



14-22349

court admitted the treating physician's testimony even though the entirety of the testimony was not stated to a reasonable degree of medical probability. We conclude that the district court correctly applied our holding in *Williams v. Eighth Judicial District Court*, 127 Nev. ___, 262 P.3d 360 (2011), which clarified that a defense expert's alternative-causation testimony need not be stated to a reasonable degree of medical probability when being used to challenge an element of the plaintiff's claim.

We also take this opportunity to determine that ex parte communication with an opposing party's expert witness is improper. If such improper communication occurs, as it did in this case, a new trial is warranted if prejudice is demonstrated. Because the expert's testimony was not affected by the improper communication in this case, however, appellant Kami Leavitt has not demonstrated prejudice, and thus, the improper communication does not warrant a new trial.

We further address whether an employee's default may be used against an employer codefendant who is contesting liability. Because we conclude that it cannot, we affirm the district court's decision in this case.[1]

---

[1]Leavitt also challenges the constitutionality of NRS 41A.071's expert affidavit requirement. However, this issue is not reviewable because Leavitt's attachment of an expert affidavit to the complaint removed any element of harm that she may have experienced from the alleged constitutional violation. Moreover, Leavitt has already paid for an expert and that alleged injury cannot be redressed by this court. Accordingly, Leavitt lacks standing because litigated matters "must present an existing controversy, not merely the prospect of a future problem." *Resnick v. Nev. Gaming Comm'n*, 104 Nev. 60, 66, 752 P.2d 229, 233 (1988) (quoting *Doe v. Bryan*, 102 Nev. 523, 525, 728 P.2d 443,

*continued on next page...*

## FACTS

Leavitt met with respondent Jon L. Siems, M.D., for an initial consultation for Lasik corrective vision surgery. Leavitt noted on her patient intake form that she "always" had dry eyes. The same day, Dr. Siems performed Lasik corrective surgery on both of her eyes. After the surgery, Leavitt lost vision and experienced irritation; she later developed other ocular complications. In the following years, her eyes suffered from a number of conditions, including diffuse laminar keratitis (DLK) and epithelial defects.[2] Leavitt underwent treatment by many specialists.

Leavitt subsequently sued Dr. Siems, respondent Siems Advanced Lasik and Refractive Center, and a Siems Advanced Lasik employee, Dr. Kathleen Wall, asserting claims for medical malpractice and professional negligence. Dr. Siems and Siems Advanced Lasik answered, asserting affirmative defenses of contributory negligence or wrongful conduct and assumption of the risk. A default judgment was entered against Dr. Wall, who was served via publication and did not answer or appear in the district court.

The case went to trial against Dr. Siems and Siems Advanced Lasik. By that time, Leavitt was experiencing constant pain and burning in her eyes, had permanently lost visual function in her right eye, and had only a possibility of slightly better than legally blind vision in the left eye.

---

...*continued*
444 (1986)); *see Elley v. Stephens*, 104 Nev. 413, 416, 760 P.2d 768, 770 (1988).

[2]DLK is an inflammatory response. An epithelial defect occurs when the surface tissue of the eyeball has been abraded or sloughed off from trauma, dry eyes, an infection, or the use of certain medications.

SUPREME COURT
OF
NEVADA

(O) 1947A

At trial, defense counsel argued that Leavitt's eyes did not heal properly because she abused numbing eye drops after the surgery, exacerbating her eye problems. The defense argued that Leavitt's condition was consistent with eye drop abuse.

To support the eye-drop-abuse argument, defense counsel called one of Leavitt's treating physicians and expert witnesses, Dr. Stephen Hansen, M.D., an ophthalmologist, to the stand. Dr. Hansen testified that he had discharged Leavitt as a patient for noncompliance, explaining that Leavitt had requested numbing eye drops and he felt that she was stealing eye drops from his clinic because bottles went missing after several of her appointments. He testified that the use of the numbing eye drops may have caused her vision to deteriorate and contributed to her lack of improvement. He also felt that had she followed his directions, he could have returned her to her best corrective vision.

Leavitt, on the other hand, presented expert testimony that Dr. Siems failed to exercise the proper standard of care in his preoperative workup of the dry eye issue and by deciding to do the procedure on the same day. Her expert explained that Leavitt's deteriorating vision was not consistent with someone who abused numbing eye drops and that her subsequent procedures were all a result of the Lasik surgery and the ensuing inflammatory responses. Leavitt herself testified that, while she had been given numbing eye drops by a couple of doctors in the past, she stopped using the drops on the recommendation of one of her doctors. Leavitt stated that she never took numbing drops from a doctor's office without permission.

The jury returned a verdict for the defense, finding that Dr. Siems was not negligent and did not proximately cause damages to

Leavitt. Leavitt filed a motion for a new trial, or alternatively, for judgment as a matter of law, based in part on what Leavitt argued was an improper drug-abuse defense and on the use of Dr. Hansen's testimony to establish an alternative cause of her condition without requiring that the testimony be stated to a reasonable degree of medical probability.

Dr. Siems moved for attorney fees after trial. Attachments to his motion contained line items for a conversation with Dr. Hansen's business, Shepherd Eye Center, regarding Dr. Hansen's testimony, four telephone conferences with Dr. Hansen, and four telephone conversations with Dr. Hansen's counsel. Based on this, Leavitt's counsel raised the issue that defense counsel was improperly directly communicating with one of their witnesses, Dr. Hansen, and his staff.

The motion for new trial, or alternatively, for judgment as a matter of law, was denied. The district court concluded that the purpose of the drug-abuse theory was to contradict Leavitt's theory of negligence and not to propose an independent alternative causation theory. The court thus determined that Dr. Hansen's testimony was permissible under *Williams v. Eighth Judicial District Court*, 127 Nev. ___, 262 P.3d 360 (2011), which provides that a defense expert's testimony regarding alternative causation need not be stated to a reasonable degree of medical probability when it is being used to controvert an element of the plaintiff's claim, rather than to establish an independent theory of causation.

After judgment on the jury verdict was entered, Leavitt filed a motion for final judgment in the district court, arguing that, because the default against Dr. Wall established her liability and the defense had admitted that Dr. Wall was an employee of Siems Advanced Lasik, liability therefore attached to Siems Advanced Lasik as Dr. Wall's

employer, notwithstanding the jury verdict. The district court declined to impute Dr. Wall's liability to Siems Advanced Lasik. Leavitt appealed.

## DISCUSSION

### Admission of expert testimony

Leavitt argues that the district court did not properly apply our holding in *Williams v. Eighth Judicial District Court*, 127 Nev. ___, 262 P.3d 360 (2011), when the court concluded that Dr. Hansen's testimony regarding the numbing eye drops did not have to meet the reasonable-degree-of-medical-probability standard. Leavitt therefore argues that the district court erred in admitting Dr. Hansen's testimony and in denying her motion for a new trial or judgment as a matter of law.

We conclude that the district court correctly applied *Williams*. In *Williams*, we clarified when medical expert testimony must be stated to "'a reasonable degree of medical probability.'" 127 Nev. at ___, 262 P.3d at 367-68 (quoting *Morsicato v. Sav-On Drug Stores, Inc.*, 121 Nev. 153, 157, 111 P.3d 1112, 1115 (2005)). We explained that the application of the reasonable-degree-of-medical-probability standard hinges on the purpose of the testimony. *Id.* at ___, 262 P.3d at 368. "Any expert testimony introduced for the purpose of establishing causation must be stated to a reasonable degree of medical probability. However, defense experts may offer opinions concerning causation that either contradict the plaintiff's expert or furnish reasonable alternative causes to that offered by the plaintiff," without having to meet that standard. *Id.* at ___, 262 P.3d at 368.

This distinction exists because "when defense expert testimony regarding cause is offered as an alternative to the plaintiff's theory, it will assist the trier of fact if it is relevant and supported by

competent medical research." *Id.* at ___, 262 P.3d at 367-68. Accordingly, once a plaintiff's causation burden is met, the defense expert's testimony may be used for either cross-examination or contradiction purposes without having to meet the reasonable-degree-of-medical-probability standard, so long as the testimony consists of competent theories that are supported by relevant evidence or research. *Id.* "This lowered standard is necessarily predicated on whether the defense expert includes the plaintiff's causation theory in his or her analysis." *Id.* at ___, 262 P.3d at 368.

Leavitt argues that *Williams* should not be applied in this case because that opinion issued after the close of trial. However, retroactivity is the default rule in civil cases. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 847 (1990) (Scalia, J., concurring); *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982). The district court thus did not err in applying *Williams* to this case.

*Dr. Hansen's testimony satisfied the requirements of Williams and was properly admitted*

As to whether the district court properly applied our holding in *Williams*, Leavitt contends that the court erred in finding that Dr. Hansen's testimony was offered merely to contradict her expert's testimony because the drug-abuse theory was an alternative causation theory. Leavitt also argues that Dr. Hansen's testimony in that regard should not have been admitted because it was too speculative, did not assist the jury, and was not based on a reliable methodology. Leavitt therefore contends that the district court erred in denying her motion for a new trial and motion for judgment as a matter of law. Respondents contend that Dr. Hansen's testimony was properly admitted because it

merely contradicted Leavitt's causation theory, and thus, satisfied *Williams*. They argue that the testimony concerning the eye drop abuse was based on Dr. Hansen's training and experience with numbing eye drops through his residency, cornea clinics, and 20 years of practice.

We review a district court's decision to admit expert testimony for an abuse of discretion. *Hallmark v. Eldridge*, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008). An abuse of discretion occurs when no reasonable judge could reach a similar conclusion under the same circumstances. *See Delno v. Mkt. St. Ry. Co.*, 124 F.2d 965, 967 (9th Cir. 1942).

We conclude that the district court did not abuse its discretion in allowing the testimony from Dr. Hansen, because the testimony was not offered as an alternative causation theory but for the purpose of contradicting appellant's causation theory. *Hallmark*, 124 Nev. at 498, 189 P.3d at 650. Leavitt argued that her documented history of dry eyes made her at high risk for complications such that Dr. Siems should have provided additional testing, obtained additional informed consent, and waited to perform the procedure and that his failure to do so led to her long-term visual deterioration. To rebut the argument that the surgery caused Leavitt's deteriorating vision, respondents called Dr. Hansen to testify.

Dr. Hansen testified that it was a possibility that use of numbing eye drops caused Leavitt's vision to deteriorate and that the drops contributed to her lack of improvement. He testified that in his opinion, based on speculation, if she had continued to follow his directions, he could have returned her to her best corrective vision. Dr. Hansen further testified that the drops did not cause her DLK or her initial epithelial defect, but caused her additional injury.

We conclude that respondents did not offer Dr. Hansen's testimony to establish the alternative causation theory that Leavitt's eye damage resulted from abuse of anesthetic drops rather than respondents' actions. Instead, his testimony was offered to "contradict the plaintiff's expert or furnish reasonable alternative causes to that offered by the plaintiff." *Williams*, 127 Nev. at ___, 262 P.3d at 368. It was offered to rebut Leavitt's contention that her deteriorating eye condition was a result of her surgery and show that Leavitt's deteriorating eye condition may have resulted from eye drop abuse. Because Dr. Hansen's testimony was only being used for cross-examination and contradiction, its admissibility is determined by whether he offered relevant theories that are competent and supported by relevant evidence or medical research. *Id.* at ___, 262 P.3d at 368-69. If so, then it is admissible. Dr. Hansen's testimony meets these requirements because his assessment was premised on his personal observations that were based on his training and experience with numbing eye drops' toxicity through his residency, cornea clinics, and 20 years of practice.

We further conclude that Dr. Hansen properly testified as to his opinions and inferences to rebut Leavitt's theory of causation and that, even if portions of his testimony were speculative, it was for the jury to assess the weight to be assigned to his testimony. NRS 50.305; *Houston Exploration Inc. v. Meredith*, 102 Nev. 510, 513, 728 P.2d 437, 439 (1986) (explaining in the context of a challenge to expert testimony as speculative that it is "for the jury to determine the weight to be assigned such testimony"). Accordingly, for the foregoing reasons, the district court did not abuse its discretion in admitting Dr. Hansen's testimony on the basis

that his testimony met the standard for expert testimony set forth in *Williams*.[3]

*Witness tampering*

Leavitt also argues that the district court erred in not granting a new trial based on witness tampering where defense counsel had direct, unauthorized communications with Dr. Hansen, who was Leavitt's treating physician and was disclosed by Leavitt as an expert.[4] In response, respondents argue that their communications with Dr. Hansen and his staff were necessary to schedule and coordinate the trial testimony. They contend that, accordingly, the communications did not constitute attorney misconduct and were not improper. They also point

---

[3]In light of this conclusion, reversal of the order denying judgment as a matter of law and a new trial is not warranted. *See Wyeth v. Rowatt*, 126 Nev. ___, ___, 244 P.3d 765, 775 (2010) (reviewing a denial of a motion for new trial for abuse of discretion and reviewing a district court's order on a judgment as a matter of law de novo); *Sheeketski v. Bortoli*, 86 Nev. 704, 706, 475 P.2d 675, 676 (1970) ("[A] directed verdict . . . is permissible only when all reasonable inferences from the facts presented to the jury favor the moving party."); *see* NRCP 59(a) (stating that a party is entitled to a new trial only if his or her substantial rights were materially affected).

[4]Leavitt was first apprised of this issue after trial when reviewing a motion for attorney fees from defense counsel that contained line items of the ex parte conversations. Her counsel then orally raised this issue at the hearing on the motion for new trial. While the district court did not address this argument in its new trial order, we consider the district court's silence as a denial of the sought-after relief. *See Sicor, Inc. v. Sacks*, 127 Nev. ___, ___, 266 P.3d 618, 620 (2011) (explaining that this court has "construed a district court's silence or refusal to rule as denial of the relief sought").

out that Leavitt failed to demonstrate how her substantial rights were affected by their communication with Dr. Hansen.

Bringing a claim for personal injury or medical malpractice results in a limited waiver of the physician-patient privilege with regard to directly relevant and essential information necessary to resolve the case. *See Heller v. Norcal Mut. Ins. Co.*, 876 P.2d 999, 1019 (Cal. 1994) (Kennard, J., concurring and dissenting). In this context, we have yet to address whether opposing counsel may contact or communicate with a treating physician directly, or whether all communications must be through formal discovery methods. While numerous courts have already addressed this issue, no clear-cut answer has emerged. *See King v. Ahrens*, 798 F. Supp. 1371, 1373 (W.D. Ark. 1992) ("It appears that there is no easy answer to this question and a variety of rules have developed."); *Heller*, 876 P.2d at 1019 (Kennard, J., concurring and dissenting) ("Published decisions of federal courts and courts of our sister states have debated this question with great thoroughness and have given conflicting answers.").

Some courts permit ex parte communications between defense counsel and a plaintiff's treating physician. *See, e.g., Felder v. Wyman*, 139 F.R.D. 85, 88 (D.S.C. 1991); *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128-29 (D.D.C. 1983); *Trans-World Invs. v. Drobny*, 554 P.2d 1148, 1151-52 (Alaska 1976); *Domako v. Rowe*, 475 N.W.2d 30, 36 (Mich. 1991); *Lewis v. Roderick*, 617 A.2d 119, 122 (R.I. 1992). Other jurisdictions prohibit such ex parte communications undertaken without express consent. *See, e.g., Roosevelt Hotel Ltd. P'ship v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986); *Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d 722, 727 (Tenn. 2006); *Smith v. Orthopedics Int'l, Ltd.*, 244 P.3d 939, 943 (Wash. 2010); *see also* Daniel

P. Jones, Annotation, *Discovery: Right to Ex Parte Interview With Injured Party's Treating Physician*, 50 A.L.R.4th 714, 716-18 (1986).

Our adoption of one approach over the other greatly depends on the existing rules relating to the physician-patient privilege and expert witnesses in Nevada. The physician-patient privilege is codified at NRS 49.225 and states that "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications among the patient, the patient's doctor or persons who are participating in the diagnosis or treatment under the direction of the doctor, including members of the patient's family." Only under certain circumstances does the privilege not apply. As germane to this case, the privilege does not apply "to *written* medical or hospital records relevant to an issue of the condition of the patient in any proceeding in which the condition is an element of a claim or defense." NRS 49.245(3) (emphasis added).

As to expert witnesses, the Nevada Rules of Civil Procedure affirmatively allow only formal depositions of experts. NRCP 26(b)(4), the discovery provision governing experts, provides in relevant part that:

> (A) A party may depose any person who has been identified as an expert whose opinions may be presented at trial. . . .

> (B) A party may, *through interrogatories or by deposition*, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b)[5] or upon a

---

[5]NRCP 35(b) provides that the party causing the examination shall, upon request, provide a written report setting out all findings.

showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

(Emphasis added.) This rule does not contemplate ex parte communications with the opposing party's expert witnesses.

Moreover, as previously explained by the Ninth Circuit Court of Appeals, professional ethics rules preclude defense counsel from speaking directly to the opposing counsel's expert. *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996). In *Erickson*, the Ninth Circuit interpreted the Nevada Rules of Professional Conduct to determine whether an attorney's ex parte communications with the opposing party's witness constituted misconduct. 87 F.3d at 301-02. The court concluded that legal ethics precluded defense counsel from speaking directly to opposing counsel's expert and offering him a job. *Id.* at 300-02. In doing so, the court explained that a leading legal ethics treatise states that:

> "Since existing rules of civil procedure carefully provide for limited and controlled discovery of an opposing party's expert witnesses, all other forms of contact are impliedly prohibited." Therefore, an attorney who engages in prohibited communications violates the attorney's ethical duty to obey the obligations of the tribunal.

*Id.* at 301-02 (citation omitted) (quoting 2 Geoffrey C. Hazard & W. William Hodes, *The Law of Lawyering* § 3.4:402 (2d ed. Supp. 1994)); *see* RPC 3.4(c). "Moreover, since the procedure for the discovery of experts is well established, an attorney may also be in violation of the rule prohibiting conduct prejudicial to the administration of justice." *Erickson*, 87 F.3d at 302 (citing former SCR 203(4) (1986) (now RPC 8.4(d))).

Because "'formal discovery procedures enable defendants to reach all relevant information while simultaneously protecting the

patient's privacy by ensuring supervision over the discovery process,'" we see no need to allow for such ex parte contact. *Alsip*, 197 S.W.3d at 727 (quoting *Crist v. Moffatt*, 389 S.E.2d 41, 46 (N.C. 1990)). There are also methods available to defense counsel to ensure that plaintiff's experts appear to testify at trial, such as subpoenas. *See* NRCP 45. While we recognize that the use of formal discovery procedures burdens defendants, this burden is outweighed by problems intrinsic in ex parte contact. *Smith*, 244 P.3d at 943. Given our adversarial system, allowing ex parte communications opens the door for abuse. *Alsip*, 197 S.W.3d at 729 n.5; *see Manion v. N.P.W. Med. Ctr., Inc.*, 676 F. Supp. 585, 594 (M.D. Pa. 1987), *disagreed with by MacDonald v. United States*, 767 F. Supp. 1295, 1299 n.5 (M.D. Pa. 1991).

Moreover, "'it is undisputed that ex parte conferences yield no greater evidence, nor do they provide any additional information, than that which is already obtainable through the regular methods of discovery.'" *Alsip*, 197 S.W.3d at 727 (quoting *Petrillo v. Syntex Labs., Inc.*, 499 N.E.2d 952, 956 (Ill. App. Ct. 1986)). Additionally, "ex parte discussions tend to place the physician in the position of having to make legal conclusions about the scope of the privilege and the relevancy of the material requested." *King*, 798 F. Supp. at 1373. "Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician." *Roosevelt Hotel*, 394 N.W.2d at 357. The use of formal discovery procedures is also motivated by "the potential tort liability of physicians for breach or invasion of privacy, the potential that defense counsel may seek to improperly influence plaintiff's treating physician or may discourage the physician from testifying, the duty of

loyalty from the physician to the patient, and the view that discovery rules determine the extent of waiver of the physician-patient privilege." *Jones, supra,* at 717-18.

This approach also protects the confidential and intimate nature of the relationship between the physician and patient. *Alsip,* 197 S.W.3d at 726; *see also King,* 798 F. Supp. at 1373; *Heller,* 876 P.2d at 1021 (Kennard, J., concurring and dissenting). Patients have a right to expect that their medical information will be safeguarded by the discovery process. *Manion,* 676 F. Supp. at 594; *Petrillo,* 499 N.E.2d at 961-62.

Balancing the desire for confidentiality with the need for full disclosure of relevant medical information, we conclude that there is no need to allow ex parte communication with the opposing party's experts absent express consent. Thus, the respondents' conversations with Leavitt's expert witness were improper.

Respondents acted suspiciously when they failed to inform Leavitt that they were using their reserved right to call Dr. Hansen to the stand and instead coordinated his testimony directly. Under the standard of proof required for motions for a new trial, however, Leavitt failed to show that she had been harmed because Dr. Hansen's testimony did not change as a result of the communications. *Edwards Indus., Inc. v. DTE/BTE, Inc.,* 112 Nev. 1025, 1037, 923 P.2d 569, 576 (1996) (stating that if the challenged issues would not have changed the outcome of the case, there is no violation of the party's substantial rights and thus no basis for granting a new trial); *see also Bayerische Motoren Werke Aktiengesellschaft v. Roth,* 127 Nev. ___, ___, 252 P.3d 649, 656 (2011) ("To justify a new trial, as opposed to some other sanction, unfair prejudice affecting the reliability of the verdict must be shown.").

In his pretrial deposition, Dr. Hansen indicated that he discharged Leavitt after treating her for several months because he believed that she was noncompliant and was stealing eye drops from examination rooms. He testified that he had repeatedly stressed to Leavitt that she should not use topical anesthetics because of the resultant damage to her eyes, and that it was his opinion that Leavitt's abuse of the drops contributed to her worsening condition. Dr. Hansen further testified that he felt that great progress had been made and that she likely would have recovered her vision if she had allowed him to treat her and had stopped using the topical anesthetics.

This testimony is consistent with the testimony provided by Dr. Hansen at trial. Because Dr. Hansen's testimony did not change as a result of respondents' counsel's contact with Dr. Hansen, Leavitt failed to demonstrate any prejudice resulting from the improper ex parte discussions. Thus, a new trial was not warranted. *Wyeth v. Rowatt*, 126 Nev. ___, ___, 244 P.3d 765, 775 (2010) (stating that the denial of a motion for new trial is reviewed for abuse of discretion). We therefore affirm the district court's denial of Leavitt's new trial motion on this basis.[6]

*Default judgment*

Finally, Leavitt argues that the district court erred in entering default judgment solely against Dr. Wall individually, and not also as an employee of Siems Advanced Lasik, because Leavitt alleged that Dr. Wall

---

[6]Leavitt also takes issue with the propriety of a plaintiff's treating physician testifying as an expert for the defense, but her failure to object to his testimony on this basis in the district court results in waiver of this issue. *See Holcomb v. Ga. Pac., L.L.C.*, 128 Nev. ___, ___ n.3, 289 P.3d 188, 191 n.3 (2012) (recognizing that this court will not consider an argument raised for the first time on appeal).

was acting within the scope of her employment. Leavitt asserts that because liability and causation against Dr. Wall were established upon entry of the default, Siems Advanced Lasik was precluded from asserting any defenses available to Dr. Wall and, thus, must be held vicariously liable for Dr. Wall's negligence. Respondents argue that the use of vicarious liability against Siems Advanced Lasik would deprive it of its right to have a jury determine the validity of its defense.

We decline to extend Dr. Wall's inability to contest liability and causation to Siems Advanced Lasik. In Nevada, "the answer of a co-defendant inures to the benefit of a defaulting defendant when there exists a common defense as to both of them." *Sutherland v. Gross*, 105 Nev. 192, 198, 772 P.2d 1287, 1291 (1989). "Likewise, when the defenses interposed by the answering co-defendant call into question the validity of plaintiff's entire cause of action and when such defenses prove successful, the defenses inure to the benefit of the defaulting co-defendant." *Id.*

In arguing that Dr. Wall's default should attach to answering codefendants, Leavitt attempts to turn *Sutherland* on its head. Default judgments are punitive sanctions that are not favored by the law. *Stillwell v. City of Wheeling*, 558 S.E.2d 598, 605-06 (W. Va. 2001). And we decline to use a default judgment as a foundation for vicarious liability against an answering codefendant. See *W. Heritage Ins. Co. v. Superior Court*, 132 Cal. Rptr. 3d 209, 221 (Ct. App. 2011) ("It is an established principle of law that admissions implied from the default of one defendant ordinarily are not binding upon a codefendant who, by answering, expressly denies and places in issue the truth of the allegations thus admitted by the absent party." (internal quotations omitted)); *Morehouse v. Wanzo*, 72 Cal. Rptr. 607, 611 (Ct. App. 1968) ("The general contractor,

SUPREME COURT
OF
NEVADA

(O) 1947A

17

as an employer liable under the doctrine of respondeat superior, may take advantage of any favorable aspects of the judgment against the employee, but he is not bound by the issues resolved against the employee by the latter's default."); *Dade Cnty. v. Lambert*, 334 So. 2d 844, 847 (Fla. Dist. Ct. App. 1976) (finding that county could not be held vicariously liable based on its employee's failure to plead, and stating "[t]he default of one defendant, although an admission by him of the allegations of the complaint, does not operate as an admission of such allegation as against a contesting co-defendant"); *United Salt Corp. v. McKee*, 628 P.2d 310, 313 (N.M. 1981) (holding that an employer is not foreclosed from litigating issues of negligence, respondeat superior, and damages based on an employee's default); *Balanta v. Stanlaine Taxi Corp.*, 763 N.Y.S.2d 840, 842 (App. Div. 2003) (stating that "[t]he granting of a default judgment against [the employee] does not preclude [the employer] from contesting the issue of [the employee's] negligence"). We thus decline to impose Dr. Wall's default on Siems Advanced Lasik, and therefore, we affirm the district court's order entering judgment against Dr. Wall individually only.[7]

## CONCLUSION

We conclude that the district court appropriately applied our decision in *Williams v. Eighth Judicial District Court*, 127 Nev. ___, 262 P.3d 360 (2011), which clarified existing law on medical expert testimony, to the case at hand. We also reiterate that ex parte communication with an opposing party's expert witness is improper. Because Leavitt has not

---

[7]Having considered all of the other issues raised by the parties, we conclude that they either lack merit or need not be addressed given our disposition of this appeal.

SUPREME COURT
OF
NEVADA

(O) 1947A

demonstrated prejudice, however, the improper communication does not warrant a new trial in this instance. We further determine that Dr. Wall's default may not be used against Siems Advanced Lasik as an answering employer codefendant who is contesting liability. Accordingly, we affirm the district court's judgment and post-judgment orders in this case.

_____, J.
Cherry

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A