Louis G. HATAWAY, Jr., and Freddie D. Hataway, Parents and Next of Kin of Louis G. Hataway, III, Deceased, and Louis G. Hataway, Jr., and Freddie D. Hataway, Co–Administrators of the Estate of Louis G. Hataway, III, Deceased, Plaintiffs/Appellants,

v.

Robert W. McKINLEY, Defendant/Appellee.

Supreme Court of Tennessee, at Jackson.

April 27, 1992.

**54**

ous decisions of this Court and held that Arkansas law governed the plaintiffs' wrongful death action under the *lex loci delicti* doctrine. The trial court's decision on this issue was affirmed by the Court of Appeals.

Our review of the background and modern development of conflicts of law rules convinces us that the *lex loci delicti* doctrine should be abandoned. Today we announce a new rule—the "most significant relationship" approach of the *Restatement (Second) of Conflict of Laws* (1971). Applying the "most significant relationship" approach to the facts of this case, we find that the State of Tennessee has a more significant relationship to the occurrence and the parties, and that Tennessee law should govern the action. Accordingly, we reverse the Court of Appeals' decision applying Arkansas law to this case.

## BACKGROUND

On October 20, 1984, Grady Hataway died as a result of injuries he sustained during a scuba dive in a North Little Rock, Arkansas, rock quarry. The dive was supervised by the defendant, Robert W. McKinley, and conducted as part of a scuba class taught at Memphis State University. As a result of Hataway's death, his parents filed this wrongful death action in the Shelby County Circuit Court.

The trial court granted the defendant's motion to apply Arkansas law to the plaintiffs' wrongful death claims, based on Tennessee's *lex loci* rule, and the plaintiffs were allowed to amend their complaint to conform to Arkansas law. Thereafter, the case was tried before a jury on the basis of Arkansas's wrongful death statute, Ark. Code Ann. § 16–62–102 (Michie 1987), and Arkansas's comparative fault statute, Ark. Code Ann. § 16–64–122 (Michie 1987).

After a lengthy trial, the jury returned a verdict for the defendant. The plaintiffs appealed, and the Court of Appeals reversed, holding that although Arkansas law was correctly applied, the trial court had erred by excluding from evidence defendant's admission. From the Court of

Lee L. Piovarcy, David Wade, Scott T. Beall, Martin, Tate, Morrow & Marston, P.C., Memphis, for plaintiffs/appellants.

John R. Cannon, Jr., Karen R. Renneisen, Hardison Law Firm, Memphis, for defendant/appellee.

## OPINION

ANDERSON, Justice.

In this case, we are asked to decide whether the *lex loci delicti* conflicts-of-law doctrine should continue to be followed in tort cases in Tennessee. The decedent, Grady Hataway, died as a result of complications from a scuba dive in an Arkansas rock quarry. The dive took place as part of a scuba class taught at Memphis State University by the defendant, Robert McKinley. Although both the decedent and the defendant were life-long residents of Tennessee, the trial court followed previ-

Appeals' decision, both parties appealed to this Court. We granted the plaintiffs' application for permission to appeal limited to the issue of whether the trial court correctly applied Arkansas law to this case.

### LEX LOCI DELICTI

■ The first issue we address on this appeal is whether there is a conflict between Arkansas and Tennessee law. Recovery by the plaintiffs under either Arkansas or Tennessee law is predicated on negligence, which is the failure to use reasonable and ordinary care under the circumstances which proximately causes the plaintiff's injuries. See Bowie v. Missouri Pacific Railroad Co., 262 Ark. 793, 561 S.W.2d 314 (1978); Lindsey v. Miami Dev. Corp., 689 S.W.2d 856 (Tenn.1985). However, once the negligence of a defendant has been demonstrated, there is a major difference between the defenses that can be asserted by a defendant under Arkansas and Tennessee tort law.

Arkansas is a comparative fault state, which means that an Arkansas plaintiff's recovery is reduced by the amount of his fault. Ark.Code Ann. § 16–64–122 (Michie 1987). Under Arkansas law, a plaintiff is not barred from recovering damages from a defendant unless his fault is equal to or greater than the defendant's fault. Id. Under Tennessee law, however, a plaintiff is completely barred from recovering damages if he was contributorially negligent, even if his negligence was of a lesser degree than the defendant's. Arnold v. Hayslett, 655 S.W.2d 941, 945 (Tenn.1983). The only way a plaintiff can recover damages in Tennessee despite his contributory fault is if a jury finds that his conduct was too remote in time and place to be considered a proximate cause of his injuries. Id.

In addition to the contrast in negligence law, there is a difference between the wrongful death statutes of Arkansas and Tennessee. Arkansas' wrongful death statute allows recovery "for the pecuniary injuries ... and mental anguish resulting from the death, to the surviving spouse and next of kin of the deceased person."

Ark.Code Ann. § 16–62–102(f) (Michie 1987) (emphasis added). Tennessee's wrongful death statute, on the other hand, allows recovery "for the mental and physical suffering, loss of time, and necessary. expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received." Tenn.Code Ann. § 20–5–113 (1980) (emphasis added).

Given the difference between comparative fault in Arkansas and contributory negligence in Tennessee, as well as the difference between the wrongful death statutes, we conclude that there is a conflict between Arkansas and Tennessee law which is a necessary predicate to deciding which state's law should govern this wrongful death action.

■ The doctrine of lex loci delicti has been the rule in Tennessee for over 100 years. See East Tennessee, V. & G.R. Co. v. Lewis, 89 Tenn. 235, 14 S.W. 603 (1890). Under this doctrine, a Tennessee court will determine the substantive rights of an injured party according to the law of the state where the injury occurred. Winters v. Maxey, 481 S.W.2d 755, 756 (Tenn.1972). However, there is a public policy exception to the doctrine and the law of Tennessee will be applied "where the law of the jurisdiction where the tort occurred is against good morals or natural justice, or for some other reason, its enforcement would be prejudicial to the general interests of our citizens." Id. (The majority in Winters v. Maxey, decided the public policy exception did not apply to an Alabama guest statute which requires a showing of willful or wanton conduct before a guest passenger can recover.)

■ The plaintiffs argue that the doctrine of lex loci delicti should be abandoned by this Court because it is obsolete, unjust, and arbitrary. Adherence to the doctrine, the plaintiffs say, often leads to application of the law of a state that has no interest in the controversy or no contact with the parties other than the fortuitous circumstance that the injury occurred in

that state. The defendant, on the other hand, maintains that we should retain the doctrine because it promotes certainty, predictability, and uniformity in conflicts cases. According to the defendant, the rationale of *Winters v. Maxey* is still viable today, because the jurisdictions abandoning *lex loci delicti* have suffered from increased litigation due to the inconsistent results reached under modern choice of law theories.

In *Winters v. Maxey, supra,* this Court was squarely confronted with the question of whether the *lex loci delicti* doctrine should be abandoned in Tennessee. After reviewing cases that had adopted and applied a modern "dominant contacts" rule, the *Winters* court retained the old rule because it found that the modern theories do not "provide any 'uniform common law of conflicts' to take the place of the uniform rule of *lex loci delicti." Winters,* 481 S.W.2d at 758. Justice Humphrey's dissent recognized, however, that change was inevitable.

> [W]hile I think the adoption of a general rule such as that in Restatement is inevitable as our society grows more mobile and the interest of the State in its citizens ever increases, I am content, for the present, to base my disagreement with the majority on its failure to recognize that the Alabama guest statute is contrary to justice, is contrary to good morals, and is contrary to the policy of this State....

*Id.* at 760.

At the time *Winters* was decided, *lex loci* was still the majority rule, although 15 states and the District of Columbia had repudiated *lex loci delicti* in favor of an "analysis of contacts" rule. *Id.* Since the *Winters* decision, however, numerous states have abandoned *lex loci* in favor of a more modern theory, just as Justice Humphrey predicted.

Our review of the cases from other jurisdictions reveals that an ever shrinking number of states (15) continue to follow *lex loci delicti.* These states include Alabama, Georgia, Kansas, Maryland, Montana, Nevada, New Mexico, North Carolina, South Carolina, South Dakota, Utah, Vermont, Virginia, West Virginia, and Wyoming. *See Fitts v. Minnesota Mining & Mfg. Co.,* 581 So.2d 819 (Ala.1991); *Risdon Enterprises, Inc. v. Colemill Enterprises, Inc.,* 172 Ga.App. 902, 324 S.E.2d 738 (1984); *Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731 (1985); *Hauch v. Connor,* 295 Md. 120, 453 A.2d 1207 (1983); *Lewis v. Reader's Digest Ass'n, Inc.,* 162 Mont. 401, 512 P.2d 702 (1973); *Karlsen v. Jack,* 80 Nev. 201, 391 P.2d 319 (1964); *First Nat'l Bank in Albuquerque v. Benson,* 89 N.M. 481, 553 P.2d 1288, *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976); *Boudreau v. Baughman,* 322 N.C. 331, 368 S.E.2d 849 (1988); *Oshiek v. Oshiek,* 244 S.C. 249, 136 S.E.2d 303 (1964); *Owen v. Owen,* 444 N.W.2d 710 (S.D.1989); *Velasquez v. Greyhound Lines, Inc.,* 12 Utah 2d 379, 366 P.2d 989 (1961); *Goldman v. Beaudry,* 122 Vt. 299, 170 A.2d 636 (1961); *McMillan v. McMillan,* 219 Va. 1127, 253 S.E.2d 662 (1979); *Paul v. Nat'l Life,* 177 W.Va. 427, 352 S.E.2d 550 (1986); *Ball v. Ball,* 73 Wyo. 29, 269 P.2d 302 (1954). It follows that *lex loci delicti* is no longer the majority rule.

In the few jurisdictions that have recently addressed the issue and decided to retain *lex loci,* the reasoning has been that the modern theories have not brought certainty or uniformity to the law. *See, e.g., Fitts v. Minnesota Mining & Mfg. Co.,* 581 So.2d 819 (Ala.1991). They argue that the primary advantage of *lex loci* is that "[i]t is an objective and convenient approach which continues to afford certainty, uniformity, and predictability of outcome in choice of law decisions." *Boudreau v. Baughman,* 322 N.C. 331, 368 S.E.2d 849, 854 (1988).

The answer to these arguments, however, is that *lex loci,* in its search for uniformity of result and ease of application, ignored the very substantial interests of the forum state in applying its own laws. As a result, courts created exceptions to the rule, such as the public policy exception, or circumvented the rule's operation by strained characterizations, such as describing substantive laws as procedural rules. These actions undermined certainty, uniformity, and predictability, the supposed

virtues of *lex loci delicti.* *Gutierrez v. Collins,* 583 S.W.2d 312, 317 (Tex.1979).

We agree with the great majority of other jurisdictions that the doctrine of *lex loci* is outmoded because of changes in society, causing a consequential development of modern law.[1] The *lex loci* doctrine had its conceptual foundation in the common-law vested rights doctrine, which was founded on respect for a state's territorial sanctity. *See Traveler's Indemnity Co. v. Lake,* 594 A.2d 38 (Del.1991), *Winters, supra,* 481 S.W.2d at 756. We observe that in today's modern industrial world, the vested rights theory, with its emphasis on territorial boundaries, has little relevance. "State and national boundaries are of less significance today by reason of the increased mobility of our population and of the increasing tendency of men to conduct their affairs across boundary lines." *Restatement (Second) of Conflicts of Law,* ch. 7 at 413 (1971) (Introductory Note). *See also Gutierrez v. Collins,* 583 S.W.2d at 317 (Tex.1979).

Having concluded that the doctrine of *lex loci delicti* is outmoded and increasingly irrelevant, we review the more modern rules adopted in other states in order to determine which is the better choice of law theory.

A majority of states abandoning *lex loci* have adopted the approach of the *Restatement (Second) of Conflict of Laws* (1971). Under this approach, a court applies the "law of the state where the injury occurred ... unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties." *Restatement (Second),* §§ 146 and 175. At this writing, 21 states follow the *Restatement (Second)*'s "most significant relationship" approach, including Alaska, Arizona, Colorado, Connecticut, Delaware, Florida, Idaho, Illinois, Indiana, Iowa, Louisiana, Maine, Massachusetts, Mississippi, Missouri, Nebraska, Ohio, Oklahoma, Oregon, Texas, and Washington. *See Ehredt v. DeHavilland Aircraft Co. of Canada Ltd.,* 705 P.2d 446 (Alaska 1985); *Bryant v. Silverman,* 146 Ariz. 41, 703 P.2d 1190 (1985); *First Nat'l Bank in Fort Collins v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973); *O'Connor v. O'Connor,* 201 Conn. 632, 519 A.2d 13 (1986) (R.2d where *lex loci* produces arbitrary or irrational results); *Traveler's Indemnity Co. v. Lake,* 594 A.2d 38 (Del.1991); *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999 (Fla.1980); *Johnson v. Pischke,* 108 Idaho 397, 700 P.2d 19 (1985); *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970); *Hubbard Mfg. Co. v. Greeson,* 515 N.E.2d 1071 (Ind.1987) (R.2d where the place of the tort is an insignificant contact); *Fuerste v. Bemis,* 156 N.W.2d 831 (Iowa 1968); *Lee v. Ford Motor Co.,* 457 So.2d 193 (La.Ct.App. 1984), *cert. denied,* 461 So.2d 319 (La.1984); *Adams v. Buffalo Forge Co.,* 443 A.2d 932 (Me.1982); *Pevoski v. Pevoski,* 371 Mass. 358, 358 N.E.2d 416 (1976) (*lex loci* unless another state has a more substantial interest); *Mitchell v. Craft,* 211 So.2d 509 (Miss. 1969) (*lex loci* unless another state has a more significant relationship); *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo.1969); *Harper v. Silva,* 224 Neb. 645, 399 N.W.2d 826 (1987) (*lex loci* unless another state has a more significant relationship); *Morgan v. Biro Mfg. Co.,* 15 Ohio St.3d 339, 474 N.E.2d 286 (1984); *Brickner v. Gooden,* 525 P.2d 632 (Okla.1974); *Casey v. Manson Constr. & Eng'g Co.,* 247 Or. 274, 428 P.2d 898 (1967); *Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979); and *Johnson v. Spider Staging Corp.,* 87 Wash.2d 577, 555 P.2d 997 (1976).

The primary advantage of the *Restatement (Second)* approach is that it utilizes a flexible mixture of the current thinking on choice of law. Gregory E. Smith, *Choice of Law in the United States,* 31 Hastings L.J. 1041, 1046 (1987). Some, however, have criticized the *Restatement (Second)* ap-

---

1. "When the doctrine of *lex loci delicti* was first established in the mid-nineteenth century, conditions were such that people only occasionally crossed state boundaries. Under those circumstances, there was legitimacy in a rule which presumed that persons changing jurisdictions would be aware of the different duties and obligations they were incurring when they made the interstate journey." *First Nat'l Bank in Ft. Collins v. Rostek,* 182 Colo. 437, 514 P.2d 314, 316 (1973).

proach because of its complexity. *Id.* The approach primarily advocates a governmental interest analysis, but many courts have merely counted contacts rather than engaging in an analysis of the interests and policies listed in the *Restatement. Id.*

The remaining states and the District of Columbia follow various alternative theories. Arkansas, Minnesota, New Hampshire, Rhode Island, and Wisconsin employ a theory propounded by Professor Robert Leflar in his law review article entitled, *Choice Influencing Considerations in Conflicts Law,* 41 N.Y.U.L.Rev. 267 (1966). Under this theory, a court examines the following five "choice influencing considerations" to determine which state's law should apply: (1) predictability of result, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest, and (5) the application of the better rule of law. *See Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 550 S.W.2d 453 (1977) (with emphasis on governmental interest and the better choice of law); *Bigelow v. Halloran,* 313 N.W.2d 10 (Minn. 1981) (with emphasis in tort cases on governmental interest and the better rule of law); *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966); *Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917 (1968); and *Hunker v. Royal Indem. Co.,* 57 Wis.2d 588, 204 N.W.2d 897 (1973).

The major criticism of Professor Leflar's theory is that it is "plagued by excessive forum favoritism." Smith, *Choice of Law,* 31 Hastings L.J. at 1049. The theory leads to forum favoritism because the third and fourth factors almost always point to the forum law, and judges rarely consider their state's own laws to be inferior to those of another state under the fifth factor. *Id.* In addition, the first two factors are usually irrelevant in torts cases, further emphasizing the last three, pro-forum factors. *Id.*

Another conflicts theory followed in some states is Professor Brainerd Currie's "governmental interest analysis." This theory requires a court to first identify the specific law in each state touching upon the disputed legal issue. Then, a court must determine the precise policies which the respective laws were designed to augment. Finally, a court examines each jurisdiction's relationship with the litigation and determines whether or not the application of a particular state's law would be consistent with the purposes identified as supporting that law. Gregory E. Smith, *Choice of Law in the United States,* 31 Hastings L.J. 1041, 1047 (1987). *See also* B. Currie, *Selected Essays on the Conflict of Laws* (1963).

California, the District of Columbia, Hawaii, New Jersey, and New York apply a "governmental interest" analysis similar to that developed by Professor Currie. *See Bernhard v. Harrah's Club,* 16 Cal.3d 313, 546 P.2d 719, 128 Cal.Rptr. 215 (1976); *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.,* 534 A.2d 1268 (D.C.App.1987); *Lewis v. Lewis,* 69 Haw. 497, 748 P.2d 1362 (1988) (flexible approach with emphasis on deciding which state would have the strongest interest in seeing its laws applied to the particular case); *Mellk v. Sarahson,* 49 N.J. 226, 229 A.2d 625 (1967); and *Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 480 N.E.2d 679, 491 N.Y.S.2d 90 (1985) (although New York began with a combination of a "grouping of contacts" and "dominant interest" analysis, *see Babcock v. Jackson,* 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963), the courts of New York have focused now on an "interest" analysis similar to Professor Currie's).

The advantage of Professor Currie's "interest analysis" is that it is sensitive to the substantive laws being considered. Smith, *Choice of Law,* 31 Hastings L.J. at 1048. The basic disadvantage of the theory, however, is that it fails to adequately deal with true conflicts, when the purposes behind either law would be served by its application. *Id.* Another disadvantage is that the theory can be manipulated easily by identifying alternative governmental interests of a forum law, thereby leading to forum favoritism. *Id.*

Another conflicts theory is *lex fori,* which states that the law of the forum governs the rights and liabilities of the

parties. Kentucky and Michigan follow a variation of the *lex fori* theory. *See Foster v. Leggett,* 484 S.W.2d 827 (Ky.1972) (apply the law of the forum if the forum state has "enough" contacts); *Olmstead v. Anderson,* 428 Mich. 1, 400 N.W.2d 292 (1987) (*lex fori* unless another state has a more significant interest). The primary advantage of *lex fori* is that it is easy to apply, while the principal disadvantage is that it fails to consider the policies and interests represented by the substantive laws being considered.

The final two states, Pennsylvania and North Dakota, combine theories to resolve conflicts questions in tort cases. Pennsylvania approaches conflicts questions by applying a combination of the *Restatement (Second)* and "governmental interest" theories. *See Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964). North Dakota combines the grouping of contacts or dominant interest approach with Leflar's choice-influencing considerations. *See Issendorf v. Olson,* 194 N.W.2d 750 (N.D. 1972).

Our review of the various conflicts approaches persuades us that the better-reasoned rule for resolving conflicts questions in tort cases is the approach of the *Restatement (Second).*[2] We think the approach of the *Restatement (Second)* is superior for several reasons. The *Restatement* provides that the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation. We conclude this is the more logical position because generally the law of the state where the injury occurred will have the most significant rela-

tionship to the litigation. In addition, the *Restatement* is easier to apply in difficult cases because it provides a "default" rule whereby trial courts can apply the law of the place where the injury occurred when each state has an almost equal relationship to the litigation. Moreover, the *Restatement* approach allows a court to apply the law of a state that legitimately has a stronger interest in the controversy, as opposed to a state that may have no interest at all in the proceedings.

Accordingly, we adopt the "most significant relationship" approach of §§ 6, 145, 146, and 175 of the *Restatement (Second) of Conflict of Laws* (1971), which provides:

### § 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[3]

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a) the place where the injury occurred,

    (b) the place where the conduct causing the injury occurred,

    (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

    (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

---

**2.** "[The Restatement (Second) of Conflict of Laws, § 145] is the most desirable model currently available for use as a framework for making choice-of-law decisions." Westbrook, *A Survey and Evaluation of Competing Choice-of-Law Methodologies: The Case for Eclecticism,* 40 Mo.L.Rev. 407, 412 (1975).

**3.** § 6. **Choice-of-Law Principles**
    (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
    (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability, and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

### § 146. Personal Injuries

In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

### § 175. Right of Action for Death

In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The rule we adopt today shall be applied to (1) all cases tried or retried after the date of this opinion, and (2) all cases on appeal in which the conflicts of law issue was raised on a timely basis in the litigation.

Having adopted the "most significant relationship" approach of the *Restatement (Second)*, we return to the facts of this case to determine whether Arkansas or Tennessee law should be applied.

The only contact the parties had with the State of Arkansas was that the injury occurred in that state. Both the decedent and the defendant were life-long residents of Tennessee and neither owned any property in Arkansas. The parties' relationship was centered in Tennessee because the relationship was formed and continued as a result of the decedent's participation in the scuba class taught at Memphis State by the defendant. We think the fact that the injury occurred in Arkansas was merely a fortuitous circumstance, and that the State of Arkansas has no interest in applying its laws to this dispute between Tennessee residents. Under the facts here presented, we conclude that although the injury occurred in Arkansas, the State of Tennessee has a more significant relationship to the occurrence and the parties under the

factors and contacts set out in §§ 6 and 145 of *Restatement (Second)*.

Accordingly, the Court of Appeals is reversed, and this case is remanded to the trial court with instructions that the law of Tennessee should be applied to the plaintiffs' claims for wrongful death. The costs of this appeal are taxed to the defendant-appellee.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.