In re AVN CORPORATION, Debtor.

David Namer, Objecting
Party in Interest,

v.

Sentinel Trust Company, Claimant.

No. 98–20098–L.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

April 7, 2000.

542

AVN Corporation, Memphis, TN, pro se.

Samuel L. Crocker, Nashville, TN, trustee.

## OPINION

JENNIE D. LATTA, Bankruptcy Judge.

Before the Court are cross motions for summary judgment filed by Sentinel Trust Company ("Sentinel") as unsecured claimant and David Namer ("Mr. Namer") as "party in interest objector" arising out of the proof of unsecured claim filed by Sentinel in the bankruptcy case of AVN Corpo-

ration ("AVN"). Samuel K. Crocker, Chapter 11 Trustee for AVN, has filed a response in opposition to the motion filed by Mr. Namer, but has not responded to the motion filed by Sentinel. In addition, in anticipation of trial, Mr. Namer has filed a "Motion and Memorandum in Limine to Accommodate Namer's Fifth Amendment Rights" seeking the stipulation of this Court "that answers [given by Namer] during the trial will not be used as a basis to claim a waiver of his Fifth Amendment right resulting in Namer's being compelled to testify as to certain matters which may be constitutionally privileged." For the reasons set forth below, the Court will deny Sentinel's motion for summary judgment, but permit Sentinel to further amend its proof of unsecured claim at the appropriate time to conform to the evidence. Further, the Court will suspend further proceedings in this bankruptcy case related to Sentinel's proof of unsecured claim pending the outcome of the criminal investigation and possible trial concerning the activities of David Namer that are the subject of Sentinel's claim.

The Court has jurisdiction of this contested matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding, 28 U.S.C. § 157(b)(2)(B).

### I.

AVN, by its president, David Namer, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 6, 1998. This Court appointed Samuel K. Crocker trustee on August 13, 1998.

Sentinel filed two proofs of claim in this case. The first, a secured claim in the amount of $326,428.35, arises out of a Trust Indenture between AVN Corporation and Sentinel as Indenture Trustee. After trial, that claim was allowed in the amount of $306,406.38. Mr. Namer has appealed from the Court's order allowing this claim.

Sentinel also filed a proof of unsecured claim in the amount of $6,000,000 dated February 9, 1998, and amended February 19, 1999. This asserted claim arises out of a different Trust Indenture, dated February 1, 1996, for $6,000,000 of Ray and Ross Transport, Inc., 10% corporate notes, by and between Ray and Ross Transport, Inc., a Nevada corporation, and Sentinel as Indenture Trustee. Ray and Ross Transport, Inc. ("Transport") is also a Chapter 11 debtor in a bankruptcy case filed in the United States Bankruptcy Court for the District of Nevada. In that case, Sentinel commenced an adversary proceeding against 900 Capital Services, Inc., Deet Investment Corp., Ray & Ross Land Holdings, Inc., and Pacific Coast Investment Co., arising out of the Trust Indenture that is the subject of its unsecured claim in this case. Although the trial in the Nevada adversary proceeding was completed September 2, 1999, no final judgment has been entered.

Mr. Namer is the point of connection between Transport, AVN, and a number of other Namer-related Entities that Sentinel alleges were participants in a complex criminal conspiracy intended to defraud the Transport noteholders for Mr. Namer's personal financial gain. When the AVN petition was filed, Mr. Namer appeared as its president and director. The sole shareholder of AVN at that time was the Alexandra Vivien Namer Trust, a trust established by Nissim Russo, now deceased, for the benefit of Mr. Namer's minor daughter. Mr. Russo was the husband of Grace Russo, Mr. Namer's mother. The Trustee for the Alexandra Vivian Namer Trust was Robert Namer, David Namer's brother.

Subsequently, as a result of this Court's rulings that an officer of a debtor corporation lacks standing to raise a number of issues raised by Mr. Namer, Mr. Namer purchased the stock of the Debtor from the Trustee, his brother, for $1 plus 45% of any recovery obtained by Mr. Namer from the AVN bankruptcy estate. Thus, Mr. Namer now appears in the capacity of

shareholder and has objected to the proof of unsecured claim filed by Sentinel and filed a motion for summary judgment. Mr. Namer appears in these proceedings pro se.

The Chapter 11 Trustee, through his counsel, also filed an objection to Sentinel's proof of unsecured claim, but has not filed a motion for summary judgment or a response to Sentinel's motion. AVN filed a third objection to the proof of unsecured claim, but AVN is no longer represented by counsel and has not responded separately to either motion for summary judgment.

The Trustee has liquidated substantially all of the assets of AVN, consisting of vacant land located at 5603 St. Joseph's Fairway, Memphis, Shelby County, Tennessee, and an office building located at 1080 West Rex Road, Memphis, Shelby County, Tennessee. The net proceeds from the sales of real property were $350,-383.69. Sentinel's secured claim was allowed by this Court in the amount of $306,406.38. The only assets remaining to the estate of AVN are certain claims. The Trustee has filed a complaint against United Fire Insurance Company arising out of certain rent performance bonds. That complaint is the subject of litigation pending in the United States District Court for the Western District of Tennessee. The Trustee has also succeeded Sentinel as plaintiff in a complaint against Grace Russo, David Namer, and Sandra Namer to recover the value of certain improvements made to Grace Russo's house allegedly with funds belonging to AVN.

Sentinel alleges that AVN is liable for the losses sustained by the holders of the Transport notes ("Transport Noteholders") on any of the following theories:

(1) AVN is a general partner in the so-called Ray and Ross Joint Venture and thus is liable to Sentinel as indenture trustee for the Transport Noteholders;

(2) The Ray and Ross Joint Venture is a civil conspiracy under Nevada law and AVN is liable to Sentinel as a co-conspirator; and/or

(3) The Ray and Ross Joint Venture constitutes a fraud upon Sentinel and AVN is a co-participant in the fraud.

Sentinel asserts that it is entitled to summary judgment on its claim because the Objectors (Mr. Namer, AVN, and the Trustee) have failed to rebut the presumption of validity given to its proof of claim. Mr. Namer asserts that he is entitled to summary judgment based on any of the following: res judicata, collateral estoppel, judicial estoppel, Sentinel's lack of standing to represent the interests of the Transport Noteholders, failure to state a claim, and/or failure to plead fraud with particularity.

Shortly before Sentinel filed its motion for summary judgment, Mr. Larry E. Baresel entered a plea of guilty to a two-count information charging a criminal conspiracy between himself and David Namer arising, in part, from the issuance of the Transport Notes. *See* Transcript of Change of Plea before the Honorable Julia S. Gibbons, January 25, 2000, *United States v. Baresel,* No. 99–00149–1 (W.D.Tenn.) (Sentinel Ex. 11) (hereinafter "Transcript"). Mr. Baresel is an attorney who assisted Mr. Namer in the "preparation, issuance and sale of corporate notes to the investing public." Transcript, p. 4. By his guilty plea, Mr. Baresel has agreed that he "conspired with others to devise a scheme and artifice to defraud individual investors and licensed broker-dealers of money and/or property." Transcript, p. 6. With respect to Transport, Mr. Baresel has agreed that in the private placement memorandum for Transport, the following facts were omitted: "that the purchase of Ray and Ross [Transport] was not final and all the company stock had been placed in escrow; that the board of directors and chief operating officer and shareholders of Ray and Ross [Transport] had never been advised of or approved of a $6 million corporate note issued on behalf of Ray and Ross [Transport]; that Mr. Baresel and Mr.

Namer did not have authority to issue the $6 million in corporate notes on behalf of Ray and Ross [Transport]; and that the condition of buses pledged as collateral to corporate note purchasers had deteriorated significantly since the original appraisal had been completed." Transcript, pp. 7–8.

As the transcript of the proceedings before Judge Gibbons makes clear, and as Mr. Namer has readily admitted, there is an ongoing criminal investigation into the activities of Mr. Namer. Mr. Namer has repeatedly invoked his privilege against self-incrimination both in hearings before this Court and in discovery depositions. Mr. Namer filed a "Motion and Memorandum in Limine to Accommodate Namer's Fifth Amendment Rights" in anticipation of the trial on Sentinel's unsecured proof of claim. In the hearing on that motion, Mr. Namer made clear that he seeks protection from this Court to enable him to unilaterally decide which questions he will or will not answer at trial in pursuit of his objection to Sentinel's unsecured proof of claim. Mr. Namer believes that after all assets are liquidated and all administrative and secured claims are paid from the assets of AVN, there remains "some upside" of approximately $60,000–$70,000, which will be returned to AVN (and thus to its shareholder). Pursuant to the Sales Agreement with Robert Namer, David Namer would be entitled to retain 55% of any distribution. Mr. Namer is essentially a speculator, impermissibly seeking to use the "Fifth Amendment shield as a sword." *United States v. U.S. Currency*, 626 F.2d 11, 16 (6th Cir.1980) (quoting *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087 (5th Cir.1979)).

For this reason, as discussed more fully below, the Court has decided to suspend all proceedings in this bankruptcy case until the completion of the criminal investigation and possible trial of Mr. Namer. This is necessary in order to accommodate Mr. Namer's rights without unduly prejudicing Sentinel and because the Court has concluded that it cannot grant Sentinel's motion for summary judgment based on the proof of claim that was filed. The Court will not rule upon Mr. Namer's motion for summary judgment until Sentinel is given an opportunity to amend its proof of claim in light of evidence provided by its review of the AVN corporate documents that have been until only recently in the custody of the Federal Bureau of Investigation and the results of the criminal investigation into the activities of Mr. Namer. The reasons that the Court cannot grant Sentinel's motion at this time are discussed fully as well.

## II.

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. That burden is not discharged by "mere allegations or denials." FED. R.CIV.P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant.

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III.

Sentinel asserts that it is entitled to summary judgment on its proof of unsecured claim because the objectors have failed to overcome the presumption of validity afforded to its claim by Rule 3001(f) of the Federal Rules of Bankruptcy Procedure. That rule provides:

> A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

FED.R.BANKR.P. 3001(f). Rule 3001(f) implements Bankruptcy Code § 502(a) which provides:

> [a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

11 U.S.C. § 502(a).

As an initial matter, the Court must determine that Sentinel has pled facts sufficient to establish a prima facie case on each count of its claim. As explained by the Third Circuit Court of Appeals:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is *"prima facie"* valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*In re Allegheny International, Inc.*, 954 F.2d 167, 173–74 (3rd Cir.1992) (emphasis in original; citations omitted). To the extent that counsel for Sentinel asserts that something less than the statement of a prima facie case is required to invoke the presumptive validity of a proof of claim, he is mistaken. In order to enjoy the presumption of validity, a proof of claim must allege facts that would entitle the creditor to recovery.

Sentinel's claim against AVN consists of three counts: partnership, civil conspiracy, and fraud. The Court will discuss the sufficiency of Sentinel's pleading with respect to each of these counts.

### A. Partnership

Sentinel alleges that the so-called Ray and Ross Joint Venture constitutes a general partnership, that AVN is a general partner in the Ray and Ross Joint Venture, and that AVN, as general partner, is liable to Sentinel under the Transport Notes. Attached to Sentinel's proof of claim as Exhibit 1 is the copy of the Trust Indenture, which includes an exemplary copy of a Transport Note. The Trust Indenture identifies Ray and Ross Transport, Inc., a Nevada corporation, as the maker of the Transport Notes.

In order to establish a prima facie case against AVN under a partnership theory, Sentinel must allege (1) the existence of the Ray and Ross Joint Venture; (2) that the Ray and Ross Joint Venture is liable for the obligations of Transport; (3) that AVN is a partner or joint venturer in the Ray and Ross Joint Venture, and thus is jointly and severally liable for the obli-

gations of the joint venture, including the obligations of Transport.

▇▇▇▇ The bankruptcy court determines the allowance of a pre-petition claim against a bankruptcy estate based on non-bankruptcy law. *See Professional Investors Ins. Group, Inc. v. United Overseas Bank (In re Professional Investors Ins. Group, Inc.)*, 232 B.R. 870, 883 (Bankr. N.D.Tex.1999). The bankruptcy court generally will apply the choice of law principles of its forum state to determine which state's substantive law should be applied to resolve a multi-state dispute. *Bailey v. Chattem, Inc.*, 684 F.2d 386, 392 (6th Cir.1982). The formation and existence of a partnership or joint venture is a question of contract, not of tort. In Tennessee the construction and validity of a contract are governed by the law of the place where the contract is made. *Ohio Casualty Ins. Co. v. Travelers Indemnity Co.*, 493 S.W.2d 465, 466 (Tenn.1973).

> "The Tennessee conflict of law rule provides that rights and obligations under a contract are governed by the law of that state with a view to which it is made and that the intentions of the parties in this respect to be gathered from the terms of the instruments and all of the attending circumstances control."

*Id.* at 466–67 (quoting *First American Nat'l Bank v. Automobile Ins. Co.*, 252 F.2d 62 (6th Cir.1958)). Under this test, the law of Nevada should determine whether a joint venture was formed for the purpose of purchasing and controlling Transport, a Nevada corporation.

▇▇▇▇ The Nevada Supreme Court has defined a joint venture as follows:

> A joint venture is a contractual relationship in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses.

*Radaker v. Scott*, 109 Nev. 653, 658, 855 P.2d 1037, 1040 (1993) (citation omitted).

"[T]he principals of law regarding general partnerships encompass joint ventures." *Id.* (citation omitted). The Uniform Partnership Act, NRS Chapter 87, defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit...." NRS 87.060. The Act also provides the following rules for determining the existence of a partnership:

1. Except as provided by *NRS 87.160* persons who are not partners as to each other are not partners as to third persons.

2. Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

3. The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

4. The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference may be drawn if such profits were received in payment:

> (a) As a debt by installments or otherwise;
>
> (b) As wages of an employee or rent to a landlord;
>
> (c) As an annuity to a surviving spouse or representative of a deceased partner;
>
> (d) As interest on a loan, though the amount of payment vary with the profits of the business; or
>
> (e) As the consideration for the sale of a good will of a business or other property by installments or otherwise.

NRS 87.070.

▇▇▇▇ Ultimately, the existence of a partnership or joint venture is a matter of

the parties' intent. *See Las Vegas Machine & Engineering Works v. Roemisch,* 67 Nev. 1, 8, 213 P.2d 319, 322 (1950). "A joint venture is a less formal relationship than a partnership and is typically an association entered into to perform a more limited business objective for a more brief period of time." *Hook v. Giuricich,* 108 Nev. 29, 31, 823 P.2d, 294, 296 (1992) (citing *Fredrickson v. Kluever,* 82 S.D. 579, 152 N.W.2d 346, 348 (1967)).

 Sentinel has alleged that the Ray and Ross Joint Venture consisted of Mr. Namer, the Namer-related Entities (Network Mortgage Services, Inc. ("NMS"); Lending and Investment Advisory, Inc. ("LIA"); Ray and Ross Land Holdings, Inc. ("Land Holdings"); Powernet Corporation; AVN; Offshore Insurance Services Corp. ("OIS"); and others) and 900 Capital Services, Inc., a California corporation ("900 Capital"). Sentinel has alleged that the venture was formed for the purpose of acquiring the stock of Transport. Sentinel has not alleged that the joint venturers agreed to share profits and/or losses. Sentinel has attached to its proof of claim a copy of the Stock Purchase Agreement dated December 8, 1995, pursuant to which Stephen Slade, individually, 900 Capital, NMS, LIA, AVN, and Powernet were to become the buyers of the stock of Transport. The Stock Purchase Agreement makes no provision for the sharing of profits or losses among the purchasers, except that the agreement provides that each of the parties will bear its own costs and expenses incurred in connection with the contemplated transaction. Stock Purchase Agreement, ¶ 9.(g). Ordinarily, a stock purchase agreement or stock ownership does not create the relationship of joint venturer or partner among the stockholders. Sentinel alleges that in this case, however, the stock purchase failed because of the failure of the Nevada Public Service Commission to approve the transfer of the Transport stock. Sentinel alleges that despite this, the joint venturers, "specifically David Namer, act-

ing on behalf of AVN, took control of Ray and Ross Transport, Inc., and acted as if they were in fact the owners of Ray and Ross Transport, Inc." Proof of Claim ¶ 21. Joint control of the business of Transport would tend to indicate the existence of a joint venture. *See Las Vegas Machine & Engineering Works,* 67 Nev. at 11, 213 P.2d at 323–24.

Other than Sentinel's conclusory statement, however, there are no factual allegations in the proof of claim tending to indicate joint control over Transport. Sentinel does allege that David Namer, acting on behalf of AVN, exercised control over Transport, and gives specific examples of his actions: David Namer caused Transport to incur obligations beyond its ability to repay; David Namer used Transport as his own instrumentality for fraudulent purposes; David Namer interviewed applicants for, and approved the hiring of, the officers of Transport; and David Namer exercised substantial control over the disbursements and operations of Transport after December 8, 1995. These allegations, if proven, tend to establish that David Namer was the alter ego of Transport, but provide no information as to why or how these actions were taken on behalf of AVN.

If the allegations are taken at face value, *i.e.,* that David Namer was in fact acting on behalf of AVN, then Sentinel has succeeded only in alleging that AVN exercised control over Transport. Sentinel does not allege that Mr. Namer was acting on his own behalf as well as on behalf of AVN, and Sentinel fails to allege any exercise of control over Transport by any other alleged joint venturer. It seems clear from Sentinel's proof of claim and supporting documents, that the only actor on the part of the Namer-related Entities was David Namer. Thus Sentinel has failed to allege sufficient facts tending to demonstrate joint control over the business of Transport.

 Sentinel's failure to allege an agreement concerning the sharing of prof-

its or losses among the asserted joint venturers and failure to allege common control of the business enterprise of Transport mean that it has failed to establish one of the essential elements of its claim that AVN is liable as a general partner of the Ray and Ross Joint Venture for the obligations of Transport: the existence of a partnership or joint venture. Thus Sentinel's claim based on a partnership theory must fail. Because the court has determined that Sentinel has failed to allege facts sufficient to establish one of the essential elements of its prima facie case for partnership liability, it is not necessary for the Court to consider the allegations concerning the remaining elements. Nevertheless, in order to set forth fully its conclusions, the Court will consider the sufficiency of Sentinel's allegations concerning the remaining elements.

■■■ In order to satisfy the second element of its prima facie case, Sentinel must allege facts that, if proven, would render the joint venture liable for the obligations of Transport under the Trust Indenture. Ordinarily, a corporation is a separate legal entity, responsible for its own debts and obligations. Indeed, "[t]he corporate cloak is not lightly thrown aside." *Baer v. Amos J. Walker, Inc.,* 85 Nev. 219, 220, 452 P.2d 916 (1969) (quoted in *Lorenz v. Beltio, Ltd.,* 114 Nev. 795, 963 P.2d 488, 496 (1998)). The requirements for piercing the corporate veil are:

(1) The corporation must be influenced and governed by the person asserted to be its alter ego[;] (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.

*Lorenz v. Beltio,* 963 P.2d at 496 (quoting *Ecklund v. Nevada Wholesale Lumber Co.,* 93 Nev. 196, 197, 562 P.2d 479, 479–80 (1977) which quotes *McCleary Cattle Co. v.*

*Sewell,* 73 Nev. 279, 282, 317 P.2d 957, 959 (1957)).

■■■ Sentinel alleges, "In connection with the Ray and Ross Joint Venture, David Namer acting on behalf of AVN, exercised control over Transport, caused Transport to incur obligations beyond its ability to repay them, and used Transport as his own instrumentality for fraudulent purposes." Proof of Claim, ¶ 15. "David Namer, acting on behalf of AVN, interviewed applicants for, and approved the hiring of, officers of Transport. Exhibit 6, Ridley Deposition, pages 8–13." Proof of Claim ¶ 16. "David Namer, acting on behalf of AVN, exercised substantial control over the disbursements and operations of Transport after December 8, 1995. Exhibit 6, Ridley Deposition, pages 8–13 and 50–54." Proof of Claim ¶ 17. Sentinel's statements that David Namer was acting on behalf of AVN in exercising control over Transport are not supported by the referenced exhibit, the deposition of Lisa Hamilton Ridley, chief operating officer of Transport. Nowhere in the sections of the deposition relied upon by Sentinel is AVN even mentioned. More to the point, to establish its prima facie case, Sentinel must allege facts that tend to show that Transport was influenced and governed by the *Ray and Ross Joint Venture.* If anything, Sentinel has alleged that Transport was influenced and governed by David Namer. The bare allegation that David Namer was acting on behalf of AVN provides no help in establishing what Sentinel seeks to establish: that the Ray and Ross Joint Venture was the alter ego of Transport.

■■■ Finally, in order to establish its prima facie case, Sentinel must allege facts which, if proven, would demonstrate that AVN was a partner, or joint venturer, in the Ray and Ross Joint Venture. Sentinel alleges that AVN was one of the Namer-related Entities, which are identified by Sentinel as actors in the alleged joint venture. Again, this is a bare allegation, not supported by any factual allegations tend-

ing to show action on the part of AVN. Sentinel seems to believe or assert that because this Court has previously found that David Namer is the alter ego of AVN, every action of David Namer is the action of AVN. This is not accurate. It would be more accurate to say that every action of AVN is the action of David Namer. Indeed, Sentinel alleges that AVN and the other Namer-related Entities were mere instruments of David Namer.

A word picture may be helpful in explaining the relationship between David Namer and the Namer-related Entities: it is as if each of these corporations was a puppet upon a shelf. If Sentinel is correct, David Namer would pick up a puppet and slide it over his hand as his needs dictated. At any point in time, he might have puppets on both hands, or even two puppets on one hand, but when the puppets were on the shelf, they were not acting, and at no time can we say that one of the puppets came to life and slid David Namer over its own hand. As a result of the improper control exercised by David Namer over AVN, AVN could not enter into an agreement independently of David Namer; thus it could not have been a joint venturer or partner.

Sentinel's motion for summary judgment as to its partnership theory must be denied.

## B. Civil Conspiracy

Sentinel's proof of claim alleges that the "Ray and Ross Joint Venture constitutes a civil conspiracy under Nevada law, created and used to do harm to Sentinel and the Secured Corporate Noteholders"; AVN was a co-conspirator; and thus, AVN is liable to Sentinel as trustee. Proof of Claim ¶¶ 70–72. Sentinel's memorandum in support of its motion for summary judgment relies upon Tennessee law, rather than Nevada law, in support of its claim for civil conspiracy.

■■■ In *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn.1992), the Supreme Court of Tennessee adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws (1971) for tort cases in Tennessee. The Tennessee court found the doctrine of *lex loci delicti* (place of injury), which had been the rule in Tennessee for over 100 years, to be "outmoded and increasingly irrelevant." *Hataway*, 830 S.W.2d at 57. "Under this new approach, a court applies the 'law of the state where the injury occurred ... unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties.'" *Id.* (quoting Restatement (Second), §§ 146 and 175).

Under the most significant relationship approach, the following contacts are considered:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(d) the place where the relationship, if any, between the parties is centered.

The contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Hataway*, 830 S.W.2d at 59 (quoting Restatement (Second) of Conflict of Laws (1971) § 145(2)).

■■■ The injury complained of by Sentinel is the fraud visited upon the Transport Noteholders that caused them to purchase the Transport Notes. Sentinel alleges that NMS, a Namer-related Entity, sold the Transport Notes to third parties, but does not identify the locations of the purchasers. The Court can draw no conclusions concerning the place of injury from the allegations of the proof of claim. The Court cannot determine from the proof of claim where the sales of Transport Notes occurred, thus it cannot consider this contact, either.

900 Capital is a California corporation with a business location in California. Mr.

Namer is a Tennessee resident. Sentinel, AVN, and NMS are Tennessee corporations. LIA is a Mississippi corporation. Powernet is an Oklahoma corporation. Sentinel alleges that Mr. Namer controlled Transport, AVN, NMS, LIA, and Powernet. Mr. Namer maintained his office, at all relevant times, in Memphis, Tennessee. The location of the parties might dictate that the law of Tennessee be applied; however, the focus of the alleged conspiracy was the acquisition of Transport, a Nevada corporation with its place of business in Nevada. The Court believes that, on the whole, Nevada is the state with the most substantial contacts with the alleged conspiracy.

■ Under Nevada law, "[a]n actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Sutherland v. Gross*, 105 Nev. 192, 772 P.2d 1287, 1290 (1989). In addition, the party claiming conspiracy must prove the existence of either an express or implied agreement. *Dow Chemical v. Mahlum*, 114 Nev. 1468, 970 P.2d 98, 112 (1998).

■ In order for Sentinel to establish its prima facie case for civil conspiracy, Sentinel must allege facts, which if proven, would establish each of the required elements set out by the Nevada Supreme Court. The first of those elements is a combination of two or more persons. Ray and Ross Joint Venture is alleged to have been comprised of David Namer, the Namer-related Entities, and 900 Capital. In its proof of claim, Sentinel does not allege that anyone acted on behalf of the Namer-related Entities other than David Namer. As a general rule, a corporation cannot conspire with its agents or employees. *See, e.g., Nurse Midwifery Assoc. v. Hibbett*, 918 F.2d 605, 615 (6th Cir.1990) (restraint of trade); *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir.1984) (civil rights). The Sixth Cir-

cuit has adopted the rationale of the Fifth Circuit in *Nelson Radio* :

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

*Doherty*, 728 F.2d at 339 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir.1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953)). In this case, of course, the reverse is true. David Namer was not the agent of AVN because AVN was the mere instrumentality of David Namer. AVN cannot be a co-conspirator with Mr. Namer, because Mr. Namer cannot conspire with himself.

## C. Fraud

■ Sentinel's third theory for recovery against the bankruptcy estate of AVN is that the Ray and Ross Joint Venture constitutes a fraud upon Sentinel and the Transport Noteholders; that AVN is a co-participant in the fraud; and that AVN is therefore liable to Sentinel under the Transport Notes. Proof of Claim ¶¶ 74–76. This is but a restating of Sentinel's prior two theories, for "co-participant" can be only another way of saying that AVN was a partner, joint venturer, or co-conspirator. There are no allegations in Sentinel's proof of claim concerning actions of AVN apart from the actions of David Namer. Based on Sentinel's allegations, it is David Namer, if anyone, who defrauded Sentinel and the Transport Noteholders. If AVN was the mere instrumentality of Mr. Namer, it could not have been a co-participant in Namer's fraud.

## IV.

■ Based upon the allegations of the Proof of Claim, the Court cannot grant summary judgment to Sentinel because Sentinel has failed to allege facts sufficient to establish a prima facie case for its theo-

ries of recovery. Ordinarily that would end the matter, and the Court would disallow Sentinel's claim in the face of Mr. Namer's motion for summary judgment based on Sentinel's failure to state a claim. In this case, however, it seems clear that Sentinel has stated a claim, but not under the theories it set out to establish. Sentinel clearly has alleged facts which, if proven, would permit a trier of fact to find that David Namer dominated and controlled the activities of Transport such that David Namer is the alter ego of Transport. Sentinel has further alleged facts which, if proven, would establish that David Namer defrauded Sentinel and the Transport Noteholders. Sentinel has alleged facts which, if proven, would permit it to trace the fruits of that fraud to the assets of AVN.

As stated previously, the Court is aware that there is an ongoing investigation into the possible criminal activities of David Namer and is aware that Larry Baresel, an attorney, has pled guilty to a two-count information charging a criminal conspiracy between himself and David Namer involving, in part, the issuance of the Transport Notes. The Court is further aware that until recently the corporate records of AVN have been in the custody of the Federal Bureau of Investigation, and thus not available to Sentinel. The ongoing criminal investigation and unavailability of AVN corporate records explain the reluctance of Sentinel to seek to establish directly the liability of David Namer for the alleged fraud perpetrated upon Sentinel and the Transport Noteholders. For this reason, the Court believes that the interests of fairness dictate that Sentinel's proof of claim not be disallowed at this time, but that it be permitted to further amend its proof of claim, at the appropriate time, to conform to the evidence it is able to discover through the efforts of the FBI, should these become public, and through the documents which have only recently become available to it.

Further, Mr. Namer filed his motion in limine seeking an accommodation of his Fifth Amendment rights. Specifically, "Namer requests this Court to stipulate that any answers given during the trial will not be used as a basis to claim a waiver of this fifth amendment right resulting in Namer's being compelled to testify as to certain matters which may be constitutionally privileged." Motion & Memorandum in Limine to Accommodate Namer's Fifth Amendment Rights, pp. 2–3. This Court is not comfortable allowing Mr. Namer to unilaterally decide which questions he will answer at trial and which questions he will not. Mr. Namer has asked for an accommodation of his Fifth Amendment rights. In *United States v. U.S. Currency,* a case cited by Mr. Namer in his memorandum in support of his motion, the Court of Appeals for the Sixth Circuit suggests that an accommodation could be the staying of all civil proceedings "until the completion of any criminal prosecutions or until the relevant statutes of limitations for the federal and state criminal offenses have expired." *Id.* at 17. The Court believes the suspension of further proceedings to be an appropriate accommodation in this case.

The Court concludes that it is appropriate to suspend further proceedings in this case related to Sentinel's proof of unsecured claim, including consideration of Mr. Namer's motion for summary judgment, until the conclusion of the investigation and all criminal proceedings relating to Mr. Namer, or upon request of Sentinel and appropriate orders of the Court. *See* 11 U.S.C. § 305(a)(1). The Court believes that such a suspension would be in the interest of the creditors, the Debtor, and Mr. Namer.

### V.

To summarize the Court's holdings:

(1) Sentinel's motion for summary judgment will be denied; but

(2) Sentinel will be permitted to amend its proof of claim at the appropriate time;

(3) Further proceedings related to Sentinel's proof of unsecured claim will be suspended until the conclusion of the investigation and all criminal proceedings related to Mr. Namer, or until further order of this Court; and

(4) Mr. Namer's motion for an accommodation will be granted.

The Court will enter appropriate orders consistent with this Opinion.